### No. 11,542.

### JOHN M. LOCKHART VS. M. C. SMITH.

1. While under the decision in Prescott vs. Payne, 44 An. 650, an assessor may not be called on to ascertain whether proceedings which culminated in a forced sale of the property of a person holding by recorded title be affected by nullities of a character such as to cause ownership not to shift, he is not authorized to substitute for the actual owner's title that of a person not holding under the prior title and in privity with it, but claiming under and through a later, distinct. independent adverse title.

.2. It is the duty of the vendor to tender to his vendee a safe title. The vendee has the right to exact strict proof, as he owes no duty to the vendor, and a judgment of court ordering a specific performance by him of a contract for purchase might not be *res judicata* in a subsequent petitory action or action in nullity against him by parties other than the plaintiff.

APPEAL from the Civil District Court for the Parish of Orleans. *Theard, J.*

*Kernan & Wall* for the Plaintiff and Appellant.

*Farrar, Leake & Lemle* for Defendant, Appellee.

The opinion of the court was delivered by

NICHOLLS, C. J. Plaintiff seeks to compel defendant to accept title to six lots of ground situated in the square bounded by Camp, Chestnut, Cadiz and Jena streets, designated as lots 6, 7, 8, 9, 10 and 24 on a plan of the square. There was judgment in the District Court in favor of defendant and plaintiff appealed.

An examination of the record shows that these lots were adjudicated to one A. McConnell, Jr., on the 19th January, 1884, at two tax sales made on that day in enforcement of taxes of 1880, assessed upon the same as the property of Jacob Joachim. In the deed to McConnell it is declared that "the purchaser takes the property

subject to all taxes, with interest and costs thereon due by or on account of said property still remaining unpaid, whether State, City or otherwise." The sales were made under Act No. 77 of 1880.

On July 22, 1884, McConnell sold the lots to Valentine Stubenrauch.

On 28th June, 1884, the lots were adjudicated to the State of Louisiana at a sale made in enforcement of taxes for the year 1881 assessed upon the property in the name of Jacob Joachim. The sale was made under Act 77 of 1880.

On the 20th December, 1884, they were again adjudicated to the State at two sales made in enforcement of the taxes of 1882, and of the taxes of 1883, assessed upon the property in the name of Jacob Joachim. These sales were made under Act No. 96 of 1882.

On March 28, 1893, the State of Louisiana, through W. W. Heard, State Auditor, conveyed the lots to the present plaintiff, John M. Lockhart, the act of sale reciting that it was under authority of Sec. 3 of Act No. 80 of 1880.

The defendant refused to accept the title, claiming:

1. That Jacob Joachim had no valid title to the property, and a sale thereof for taxes assessed in his name could convey no title.

2. The title of the State of Louisiana was acquired at several tax sales based on assessments made in the name of one Jacob Joachim, and the proceedings which culminated in the sales were not notified to the said Joachim as required by law.

3. Prior to the said sales to the State of Louisiana the property was sold for taxes assessed in the name of the said Joachim for the year 1880, to one Valentine Stubenrauch, and the said proceedings by which the State of Louisiana acquired title were not conducted contradictorily with the said Stubenrauch.

4. The State had no valid title and therefore could convey none to the plaintiff.

The title of Jacob Joachim having been called in question, plaintiff introduced in support of it the following instrument:

"By deed of sale executed by Moses Fox, Constable of the Eighth Justice Court, parish of Jefferson, by virtue of a writ of *fieri facias*, to him directed by the judge of the Eighth Justice Court of said parish, in the matter of the suit of the City of New Orleans vs. C. C. Brickell, or owner of lots 6 and 24 to 10, square 35 old plan, or 260 new plan Faubourg West Bouligny, No. 300 of the docket of said

court, said constable sold to Jacob Joachim six certain lots of ground. with all the buildings thereon, situated in Faubourg West Bouligny, city and parish of Jefferson, now New Orleans, in the square bounded by Camp, Chestnut, Cadiz and Jena streets, designated as square 35 old plan, or 260 new plan. The said lots 6 to 10 measure each thirty feet front on Chestnut street by one hundred and twenty-eight feet in depth; lot No. 24 measures thirty feet front on Cadiz street by one hundred and fifty feet in depth, and is composed of lots 6 to 10 and 24 as per plan of said faubourg, seized at the suit of the city of Jefferson in the above mentioned suit to satisfy a judgment of said court, in favor of said city for taxes for the year 1868. This sale was made for the sum of ten dollars cash.

(Signed)                                    "C. B. FISH, D. R.

"New Orleans, January 3, 1870. ·

" Original registered in the conveyance office on June 3, 1870, in book 96, folio 734."

Plaintiff not only did not show that Jacob Joachim took possession of the property under this alleged sale, but he offered in evidence the deposition of one W. N. Wilson, who declared "that he holds actual, open, notorious corporeal possession (of the property) under John M. Lockhart (the plaintiff) by virtue of a lease executed to him on May 1, 1893; that he has known the property for many years past, and during those years, and until he entered into possession thereof under the said John M. Lockhart, the same has been vacant and abandoned property." '

No attempt was made by plaintiff to connect C. C. Brickell with James N. Brickell, hereinafter mentioned, nor with this property. No copy of the judgment or the writ of *fi. fa.* referred to in the certificate of C. B. Fish, and declared to have been the basis of the sale to Joachim, were produced, nor was their non-production accounted for, and the same remark applies to the act of sale claimed to have been made by the constable. It is perfectly obvious that this certificate of Fish is worthless as a muniment of title to the plaintiff. Introduced by the plaintiff, it exhibits a state of facts prejudicial to his claims. We have said that no attempt was made to connect C. C. Brickell with James N. Brickell. The necessity for evidence on that subject will be appreciated when it is stated that defendant, in opposition to Joachim's title, has shown by a certified copy of an act of sale passed on the *25th June, 1853,* before Richard Bremen,

Notary Public, in New Orleans, that these same lots were on that day sold to *James N. Brickell* (not to *C. C.* Brickell) by Mrs. Rachel Harbaugh, wife of Warick Martin, and has produced a certificate of H. Cain, Recorder of Conveyances of the city of New Orleans, of date of July 3, 1893, to the effect that it does not appear from the records of his office that said lots had been alienated by James N. Brickell.

It is under this condition of the record that we are asked to compel the defendant to consummate the sale of the property to him, and to declare error and reverse the action of the District Court refusing plaintiff's prayer to that effect made to it. We would not be justified in doing so. It is the duty of a seller to present to his vendee a safe title, and it is the right of the vendee to decline carrying into execution the act of sale where such a title is not tendered.

Plaintiff claims that under the decision of this court in Prescott vs. Payne, 44 An. 650, the title offered is reasonably safe, but we are not of that opinion.

Had *Joachim's title been traced* to proceedings against *James N. Brickell*, or had it been shown that *C. C. Brickell*, against whom the proceedings were directed, *held title* to the property *under James N. Brickell*, plaintiff's claims would have been much stronger than they are. The assessor might not be called on to ascertain whether proceedings which culminated in a forced sale of the owner's property were affected with nullities of such a character as not to shift ownership. As matters stand we are not warranted in holding or acting upon the presumption that the C. C. Brickell and the James N. Brickell title are one and the same or in *privity* with each other.

We must regard the former as an adverse title until the contrary be shown. If property really belonging to James N. Brickell, and so appearing of record, were (without any pretence of a divestiture of said Brickell's title) to be declared to be sold as owner by a stranger (so far as Brickell was concerned) to that title to another third person, and the act of sale between these parties were placed of record, the assessor would not be justified in making an assessment merely on the strength of such recorded act. There would, in the case supposed, be two titles of record totally distinct from each other and totally independent of each other.

In the case of Williams vs. Landry, *ante*, p. 5, it will be observed that the title of Mrs. Partee was asserted to be and claimed to be (as

it was in fact) through the real registered owner, James Dick. Her title was not an independent one.

The view we take of the rights of the defendant dispenses us from going any further than we have done in the examination of the character of plaintiff's claims of ownership, and from determining whether, after the State has, under Act No. 77 of 1880, adjudicated property to a purchaser who by the law and his contract takes the property subject to all existing taxes upon it, a court is presented with a tax deed of sale of a later date of the same property, in enforcement of a tax existing at the time of the first adjudication, such tax would be held by it to carry with it *per se* the ownership of the property, independently of any proof, as to whether the first purchaser had been called upon to pay, and had refused or neglected to pay the tax, and whether, for the purpose of the later proceedings, the State has the right to absolutely ignore the first purchaser or should to some extent recognize his right of ownership and possession. In the case before us, McConnell and his vendee seem to have been entirely disregarded; no demand appears to have been made upon either of them nor any notices given to either.

Plaintiff urges in aid of his title the prescription of three and five years. As between the parties to this suit the rules of prescription are not applicable. We presume plaintiff intended through these pleas to fortify his position as to the strength of his title 'by directing our attention to the situation which other parties would occupy, in a direct action for the ownership of the property. Defendant's defensive position in this suit is stronger than would be that of the original owner in a litigation based upon the tax proceedings which have been brought to our attention in this case. He owes no duty to the plaintiff and is entitled to the strictest kind of proof in support of the title offered.

A judgment in this case in favor of the plaintiff forcing the defendant to a specific performance of the contract of sale might not be *res judicata* in case of a future action of nullity, in a petitory action between the original owner and the defendant.

Without passing on what would be the action of the court if the pleas had been placed before us in a direct petitory action, one feature of the case in this connection which has struck our attention is the fact that this property, under the later tax sales, passed into the hands of the very party who inaugurated and prosecuted the same,

and that it only passed from the State to a third party in March, 1893, and this suit was filed in the same year.

We are of opinion that defendant can not be compelled to take the title offered. For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.