THOMPSON, J.
 

 This suit is for $6,000, being the double of an amount deposited by the plaintiff as earnest money under an agreement to purchase from the defendant certain farming lands described in plaintiff’s petition.
 

 The basis of the demand is that the defendant had receded from his contract and promise of sale by failing and refusing to make, or to tender to the plaintiff, within the term fixed, an unincumbered, title to the land, such a title as could be approved by plaintiff’s attorney and such a title as plaintiff was entitled to demand and to receive.
 

 The contract between the parties was made on April 28, 1920, and the deed was to be executed on January 1, 1921, but the acceptance by the plaintiff was conditional or was subject to the approval of the title by the plaintiff’s attorney.
 

 The price of the sale was to be $30,610, one-third of which was to be paid in cash when the’ deed was accepted, and the balance in one and two years thereafter with interest.
 

 It was agreed in the contract that if the plaintiff failed to take title after it had been approved by plaintiff's attorney, the $3,000 deposited was to be forfeited to the defendant as liquidated damages, and in the event the defendant refused to make the sale he was to ¿return to the plaintiff the said deposit of $3,000, and in addition to pay the plaintiff an equal amount.
 

 The title to the property was investigated by plaintiff’s attorney and the land was found to be incumbered with mortgages, and this fact was made known to the defendant and his attorney prior to January 1st, the day on which the deed was to be executed.
 

 The plaintiff’s attorney and the defendant and his attorney met on December 31st, when a formal deed was signed by the defendant (it having been previously signed by the plaintiff), which deed, the check for the cash payment, and the two notes representing the deferred payments were left in escrow with plaintiff’s attorney, and the matter was postponed until January 3d to give the defendant an opportunity to clear the property of incumbrances.
 

 Nothing was done by the defendant towards removing the incumbrances within the delay, arid on January 8th the plaintiff’s attorney notified the defendant that the matter would have to be closed out not later than 12 o’clock noon on January 10th.
 

 No step having been taken within this second delay to clear the land of the incumbrances, a formal written demand was made on the defendant for the return of the deposit and for the payment of the additional forfeiture. In this notice the defendant was specifically advised that the demand was made by reason of his failure to comply with the terms of the contract and to make the title as agreed on in the contract.
 

 The notice was received by the defendant on January 15th and this suit was filed on the 25th of that month.
 

 The pleadings allege, and the evidence establishes beyond a doubt, that the defendant at no time tendered to the plaintiff, or was in a position to make to the plaintiff, such a title as could be approved by plaintiff’s attorney, or such a title as plaintiff could be required to accept until nearly six months after the time fixed.
 

 As a matter of fact the defendant, on June 28, 1921, after the close of the case,
 
 *841
 
 moved the court to reopen the case to enable the defendant to
 
 show that since the trial of the case
 
 all mortgages and incumbrances of whatever character against the land had been canceled, and erased from the public records, thereby judicially admitting that up to that time defendant could not have made an unincumbered title to the land.
 

 The property was acquired by the defendant on February 8, 1917, and as a part of the purchase price the defendant assumed the payment of $6,491.40, which was secured by a mortgage on the land.
 

 This debt seems to have been paid by the defendant prior to January, 1, 1921, but the mortgage was not canceled until the 13th of that month.
 

 On January 7, 1918, the defendant made and caused to be recorded in the mortgage records an affidavit setting forth that he was indebted to his wife, Mildred Elizabeth Bailey, in the sum of $10,000, which amount he had received from her as the proceeds of the sale of her separate property and which were used by him. (
 

 Thereafter, to wit, on November 8, 1918, the defendant obtained against his wife a separation from bed and board, and this was followed by a judgment of final divorce, the last-named judgment being rendered on February 18, 1920.
 

 It does not appear from the record that the defendant’s wife accepted the community within the delay following the judgment of separation from bed and board, as provided for in C. O. 2420, but on January 28, 1919, an agreement was entered into between the defendant and the attorneys for his wife, by Which the defendant acknowledged his wife’s interest in the community, and agreed to pay her the sum of $10,000 in full satisfaction of all claims, paraphernal, and of the community theretofore existing between them. Of this amount $5,000 was paid in cash and the balance was to be paid in three equal annual installments, with interest at 5 per cent, per annum. The $5,000 paid in cash was to be applied on the recorded paraphernal claim of Mrs. Bailey, and that claim was canceled to that extent on the mortgage records.
 

 So that, at the time the sale was to have been made to the plaintiff and indeed up to January 13, 1921, there'stood upon the public records a mortgage and vendor’s privilege on the property for the sum of $6,418.67, and, up until after the trial of this suit, a mortgage in favor of the defendant’s wife for $5,000, with several years’ interest.
 

 Under these circumstances it could scarcely be contended that defendant was at any time prior to June 28, 1921, in a position to execute to the plaintiff a clear and unincumbered title to the land which he had obligated himself to do on January 1, 1921.
 

 The defendant, prior to June 28, 1921, could not have sohght specific performance on the part of the plaintiff of his contract to purchase.
 

 The plaintiff was therefore clearly within his legal rights when, .on January 15, 1921, he notified defendant that he had defaulted on his contract.
 

 The plaintiff had been extremely indulgent to the’ defendant and had given him more than a reasonable time to comply with his contract and to raise the mortgages on the land.
 

 The plaintiff could not be expected to wait an indefinite period, dependent on the will and pleasure of the defendant. There was therefore nothing else left for the plaintiff to do but to notify the defendant that he had defaulted in his obligation and to seek recovery of the amount of his deposit.
 

 After this notice, and after the filing of the suit, it was obviously too late for the defendant to offer to make title.
 

 The learned counsel for defendant say that defendant was never put in default and that no demand was made on him to make title.
 

 
 *843
 
 The answer to this is that the defendant was obligated-to present to the plaintiff a title that plaintiff’s attorney could approve, and this was to be done within a definite and fixed time. The defendant did not do so, and thereby breached the material part of his contract and the resolutory condition thereby became accomplished, and no default was necessary or required.
 

 “Where the contract has been breached, and the resolutory condition thereby accomplished, and the creditor does not desire the performance of the contract, but the enforcement of the resolutory condition, he naturally does not call upon the debtor to perform, but brings suit for the enforcement of the resolutory condition. * * *
 

 “Of course, the creditor may, as a precautionary measure, do what the plaintiffs did in this case — notify the debtor that he no longer desires that the obligation should be performed — and such a notice is after a fashion a putting in default, and it is the kind of putting in default Troplong has reference to when he says that after a putting in default the debtor can no longer offer to perform the obligation.”
 

 Murray v. Barnhart, 117 La. 1034, 42 So. 493.
 

 That was precisely what was done in the instant case. The defendant was notified that he was expected to comply with his obligation at a specified time, and, failing to do so, he was further notified that he had breached his contract and was called on to pay the penalty, caused by that breach.
 

 This was equivalent to a notice that plaintiff no longer desired that the defendant’s obligation should be performed, and as stated by the court, supra, was “after a fashion a putting in default.”
 

 It is further contended by the learned counsel for the defendant, that time was not of the essence of the contract and that the defendant had the right to comply with his obligation to make title at any time before final judgment was rendered in the case. We cannot agree with that contention.
 

 The subject of the sale was farming property. The plaintiff, believing and anticipating that the defendant would comply with his contract, visited the plantation in the first days of January for the purpose of making arrangements to supply the plantation with the necessary labor and farm stock to make a crop that year, but when it was definitely ascertained that the defendant would not make the deed in time for the plaintiff to get possession of the property and to farm it for that year, th.e plaintiff ,had the right to consider the contract at an end.
 

 The very object and purpose of the plaintiff in purchasing the property was to carry on farming operations on it, and the facts and circumstances established by the record show that time, at least in so far as the plaintiff was concerned, was of the very essence of the contract.
 

 Whatever might have been said in the case of Watson v. Feibel, 139 La. 376, 71 So. 585, to the effect that a sale wfill not be rescinded on the ground of noncompliance with its conditions, when full performance is tendered in • answer to the suit, can have no application in this case, for the reason that the defendant was not in a position, even when the case was tried, to make plaintiff a clear title.
 

 A party under obligation to make title on a specified date, and who, failing to do so, is notified that he must make title on or before a future definitely fixed date, cannot claim the right to perform six months after that date and after he has been sued and the suit tried and evidence closed.
 

 The judgment of the court below condemned the defendant to return the amount deposited, but rejected the additional claim of $3,000.
 

 The plaintiff has asked that the judgment be amended in this respect, but we assume
 
 *845
 
 from statements made in oral argument that the matter is not seriously pressed.
 

 • We are referred to the case of Smith v. Hussey, 119 La. 82, 43 So. 902, as supporting the claim, but we do not think the case analogous to the facts of this case. In the cited case the defendant had by his own act placed the property in such situation that he could not legally make the title, and this act, the court held, amounted to a definite refusal to sell and gave the plaintiff the right to the penalty.
 

 In the instant case the defendant did not refuse to make the title, but delayed clearing the property of the incumbrances for such an unreasonable delay that the plaintiff no longer desired to complete the purchase.
 

 The stipulation in the contract was that in case the defendant
 
 refused
 
 to make the sale he was to pay plaintiff $3,000 and return' the amount of the deposit. Under the circumstances stated we do not think the defendant liable for the additional penalty.
 

 Judgment affirmed.
 

 BRUNOT, J., recused.