180 So. 494

**LAUGHLIN et al. v. HAYES.**

No. 34645.

April 4, 1938.

Pujo, Hardin & Porter, of Lake Charles, and John H. Benckenstein, of Beaumont, Tex., for appellants.

Liskow & Lewis, of Lake Charles, and Bruner & Chambers, of Crowley, for appellee.

FOURNET, Justice.

This is a suit by the surviving widow and heirs of the tax debtor, Horace Laughlin, deceased, against the tax purchaser, Dr. F. N. Hayes, to have themselves recognized as the owners of the property adjudicated at tax sale and to have cancelled and erased from the records the evidence of the tax sale, on the ground of certain alleged nullities and that they had made a tender to the defendant, within

the time prescribed by law, of the amount necessary to redeem the property but that he had declined to accept the same.

The defendant denied that a tender was made to and refused by him as alleged by plaintiffs, and averred that the tax sale of June 7, 1930, was valid and vested in him a perfect title to the land; that he was placed in possession of the property shortly after the expiration of the period for the redemption thereof; and that he had maintained continuous and uninterrupted possession thereof since that date until this suit was filed on March 8, 1936, during which time he had placed valuable improvements on the land and paid the taxes thereon. He then pleaded the prescription of three and five years under article 10 of section 11 of the Constitution of 1921, as amended on November 8, 1932. In his prayer, defendant prayed that his title to the land be quieted and confirmed.

On the date of the trial of the case, plaintiffs, in open court, tendered the defendant the full amount necessary to redeem the property and, upon an order of the court, the amount tendered was deposited in the registry of the court.

Before going to trial, plaintiffs, through their counsel abandoned their attack on the tax sale on the alleged nullities thereof, and stated that they would rely on their right to recover under their allegations of having tendered the amount necessary to redeem the property within the prescriptive time and the defendant's refusal to accept. After the trial of the case defendant filed exceptions of no cause and no right of action. There was judg-

ment in the lower court in favor of the defendant, rejecting the demands of the plaintiffs and dismissing their suit at their cost "on the ground that the money required to redeem the property described in plaintiffs' petition should have been deposited with the tax collector of the parish of Acadia." Minutes of the Court, Sept. 2, 1937.

Under the provisions of section 65 of Act No. 170 of 1898, as amended and re-enacted by Act No. 133 of 1928, it is provided:

"That the payment required for the redemption of immovable property adjudicated to a purchaser for taxes, may be made, *either* to the purchaser *or* to the Tax Collector, or ex-officio Tax Collector, making said sale, or his successor in office." (Italics ours.)

Prior to the adoption of Act No. 133 of 1928, the payment required from the owner of the property adjudicated to a purchaser of tax property had to be made to and deposited with the tax collector *only when the purchaser could not be found or when he declined to receive the same.*

 It is plain from the language used by the Legislature in adopting Act No. 133 of 1928 that its intention was to make it easier for a tax debtor to redeem his property by making payment *"either to the purchaser or to the Tax Collector"* and omitted the requirement of the former act allowing the debtor to make payment and deposit with the collector the amount required, only in the absence of the tax

purchaser or upon his refusal to accept. The act is couched in clear and unambiguous language and leaves nothing for interpretation. The tax debtor, at his option, could redeem his property sold for taxes by paying the amount required for the redemption thereof *either* to the purchaser *or* to the tax collector.

The basis of plaintiffs' action is that, within the prescriptive time allowed by law, the defendant refused to accept a tender made to him of the amount necessary to redeem the property and that such constituted in law the redemption of their property.

A review of the record shows that the tax sale was made on June 7, 1930, and within less than a year of the date of recordation, June 18, 1930, Mayonce Laughlin, one of the plaintiffs, accompanied by Charles Richardson, went to defendant's office in Iota, La., where the matter of redeeming the property in controversy was taken up with him. The note of evidence is composed of the testimony of these three parties, together with certain documentary evidence.

The testimony of the witnesses is in conflict, one with the other, as to the reason why the redemption of the property was not consummated on that day. Be that as it may, it appears to us that Mayonce Laughlin (one of the heirs) abandoned the idea of redeeming the property when the defendant advised him that he would execute the redemption papers in the usual form and in the name of the deceased tax debtor but that he would not execute a quit claim in his favor. We

are fortified in this conclusion by Laughlin's testimony because he stated that when the defendant was apprised by him of the fact that he borrowed the money from the Gray estate for the purpose of redeeming the property, defendant refused to permit the redemption of the property for the reason that he thought the redemption was being effected for the benefit of the Gray estate, and that he then "just walked out and told him I (he) would see him later." He testified further that from the defendant's office they went to the parish seat, Crowley, where they saw some one at the courthouse with a view of depositing the money there and have the redemption papers mailed to him (Laughlin) at Vinton, although he stated that he did not know whether any money had been left with that party for that purpose. The other witness for the plaintiff, Mr. Richardson, testified that the defendant did not refuse to allow the redemption of the property. He further stated that, in his opinion, the only reason why he (tax purchaser) did not allow the property to be redeemed, after having been assured that the redemption was not being effected for the benefit of the Gray estate, was that he wanted to satisfy himself about the amount necessary to redeem the property. Mr. Richardson also testified that he was under the impression and belief that the papers would be mailed direct to Laughlin at Vinton by the defendant after he had ascertained the proper amount; yet, in a way he contradicts himself in his testimony by stating that he was of the opinion that the defendant was not anxious to allow the property to

be redeemed and was just putting them off in order to stall the plaintiffs, meaning until the prescriptive period had expired. Moreover, taking the foregoing into consideration with the fact that when Laughlin returned to the courthouse with Mr. Richardson, he failed to avail himself of the right to redeem his property by making the necessary payment to the tax collector, and having waited nearly six years thereafter to file this suit when, during the entire period of time, the defendant was in open and actual physical possession of the property, leaves very little doubt, if any, of his intention to abandon the redemption of the property.

For the reasons assigned, the judgment of the lower court is affirmed and plaintiffs' suit is dismissed at their cost.

O'NIELL, C. J., does not take part.

LAND, J., absent.