53 So.2d 239

**SAMUELSON v. BOSK et al.**

No. 39819.

May 28, 1951.

Williams & Wolfson and Beryl E. Wolfson, all of New Orleans, Dalton J. Barranger, Covington, for plaintiff-appellant.

Philip E. Pfeffer, Covington, for defendants-appellees.

FOURNET, Chief Justice.

The plaintiff is seeking to recover $2,-400 as liquidated damages, plus attorney's fees, on a contract for the purchase of

her property for the amount of $24,000, and is appealing from a judgment rejecting her demands.

The suit, as originally instituted, was to enforce specific performance of an alleged contract to purchase plaintiff's property, comprising some 30 acres with improvements thereon near Covington, Louisiana, and to obtain judgment in solido against the defendants, William Bosk and his wife, Anna Bosk, for the balance due of $23,000 on the purchase price—the plaintiff admitting a cash deposit of $1,000 and the pledge to her agent of defendants' account book with the St. Tammany Homestead Association to guarantee payment of the remainder of $1,400 due on the deposit. Attached to the petition is a copy of the contract, signed by the parties, in which the defendants "offer and agree to purchase" the property of the plaintiff, "with full warranty to all lots except those on reverse hereof," for the sum of $24,000, on terms of all cash. The agreement contains the provision that "If this offer is accepted I will deposit with Vendor's Agent immediately in cash" the sum of $2,400; and the further provisions that "In the event that purchaser fails to comply with this agreement within the time specified, the vendor shall have the right either to declare the deposit, ipso facto, forfeited," or "may demand specific performance;" and the purchaser, "in the event that the vendor does not comply with this agreement to sell within the time

specified, * * * shall have the right either to demand the return of double the deposit, or specific performance." There is a stipulation that "Either party hereto who fails to comply with the terms of this offer, if accepted, is obligated to pay the Agent's Commission and all fees and costs incurred in enforcing collection and damages." The offer "remains binding and irrevocable through August 22, 1947." On the reverse side are listed 17 lots "to be sold without warranty."

Defendants filed exceptions of no cause and no right of action, of vagueness, and of improper cumulation of actions, whereupon the plaintiff, abandoning her claim for specific performance, by amended petition sought judgment declaring a forfeiture of the deposit of $2,400 and condemning the defendants in solido to pay the remainder due thereon of $1,400. Other exceptions having been cured by amendments to the petition, the district court considered the exceptions of no cause and no right of action, in support of which the defendants contended that the contract to sell was never accepted or completed because the deposit called for by the contract was never made, relying on State ex rel. Bond v. Register of Conveyances, 162 La. 362, 110 So. 559, and Tucker v. Rogers, 172 La. 445, 134 So. 388. After argument the trial judge, in a well-considered opinion, overruled the exceptions and held that the defendants, by signing the contract, had obligated themselves to make the de-

posit, and upon their failure to do so must respond in damages, under Articles 1926 and 1927, Revised Civil Code. He held that the cases relied on were not controlling because of different factual situations from the case under consideration.

Following this, the defendants filed a plea of estoppel, based on the argument that the plaintiff originally chose to claim specific performance and was therefore estopped from subsequently claiming forfeiture of the deposit; and filed an answer, generally denying all the allegations of the petition and specifically averring that the plaintiff was not prepared and able to deliver a good title; that in all their negotiations they were misinformed by plaintiff or her agent, and acted in error both of law and of fact regarding the condition of plaintiff's supposed title. After trial on the merits the district judge found for the defendants, giving written reasons therefor in which he apparently reversed the position he had taken in disposing of the exceptions of no cause or right of action and held that the agent, Buquoi, had changed the contract between the parties by accepting $1,000 cash and the pledge of the Homestead account book to secure the remainder of the deposit, without authority from the plaintiff; that the evidence failed to show that in so doing he was acting for the plaintiff; and therefore the defendants were not bound, since, in his opinion, the posting of the deposit was a condition precedent to the effectuation of the agree-

ment. Additionally, he stated that the title of the plaintiff to Lot 33 of Square 22 was questionable and prevented plaintiff from tendering a valid and merchantable title thereto. Judgment was signed dismissing plaintiff's suit and ordering her to return to the defendants the $1,000 deposited with Buquoi as well as the account book of the Homestead Association. Following hearing on a new trial, this judgment was modified to eliminate that portion decreeing that the plaintiff return to the defendants the cash deposit and the account book.

The evidence adduced at the trial discloses that the defendants had been considering the purchase of this acreage for some time. The real estate agent, Buquoi, in anticipation of effectuating a sale, prepared a contract and brought it to New Orleans for the purpose of coming to agreement with the plaintiff as to purchase price. After discussion, she agreed to a price of $24,000, and other terms, which were written into the document, and her signature appended thereto on August 7, 1947. In view of her expected absence from the State for the succeeding two weeks, there was incorporated a provision that "This offer remains binding and irrevocable through August 22, 1947." On the afternoon of Friday, August 15, the defendants called at the office of Buquoi in Covington, and Mrs. Bosk signed the contract, informing Buquoi that the money for the 10% deposit was in the St. Tam-

many Homestead Association in Covington and could be withdrawn. Buquoi thereupon telephoned the Homestead, but was advised that the President was absent from town and would not return until the following Monday, and that no funds could be withdrawn without his signature. Mrs. Bosk then told Buquoi to come to her home later that afternoon, that she thought she could get the amount in cash from a neighbor; but upon his arrival she informed him she had been unable to do so, and requested him to return the following morning. He returned as requested on Saturday morning, bringing with him a receipt which he had prepared for $2,400 cash. At this meeting the contract was signed by Mr. Bosk; Buquoi, however, did not receive the full amount of the deposit, but was given $1,000 in cash and an Optional Payment Share Book of the St. Tammany Homestead Association in account with William and/or Anna Bosk, showing twenty shares of $100 fully paid stock and an additional balance of $4,809.33, to secure payment of the remainder of the deposit, which was to be withdrawn on Monday morning. The receipt previously prepared by Buquoi was given to the defendants after being amended so as to read: "Received of Mrs. Annie Bosk and Wm. Bosk the sum of $2,400, this being deposit on purchase price of property of Mrs. R. S. Wolfson, represented by $1,000 in cash and St. Tammany Homestead share account Book #1141 for withdrawal on Monday, 8/18/47, of $1,400 bal-

ance." On Monday morning, however, Buquoi was advised by an attorney representing the defendants that they had changed their minds about the purchase; and request was made for the return to them of the $1,000 and the Homestead account book. They explain this action by stating that it was only after signing the contract that they were told by Buquoi that certain lots were being sold without warranty, and they were unwilling to take such title.

Counsel for the plaintiff complains that the lower court erred in its findings, both as to facts and in its application of the law. The defendants on the other hand again urge, in argument and in brief, that the cases cited and relied on by the district judge are decisive of the issue and state the law here applicable, namely, that no contract arises until the posting of the deposit.

An examination of these cases, State ex rel. Bond v. Register of Conveyances, 162 La. 362, 110 So. 559, and Tucker v. Rogers, 172 La. 445, 134 So. 388, shows that the plaintiff in each suit was the prospective purchaser, who failed to tender the deposit called for by the contract before the offer was withdrawn, and therefore could not enforce specific performance of the contract in the first case, or recover damages for the breach thereof in the second. It is clear that the law there applicable is neither pertinent nor controlling under the facts of this case. The de-

fendants herein, William and Anna Bosk, in their offer to purchase the property of the plaintiff, clearly and unmistakably agreed that if the offer were accepted they would immediately post a deposit of $2,400. They are bound by the terms of the contract, and failure to make the agreed deposit constituted a breach of their obligation, thereby giving plaintiff a right to specific performance or to damages under the express provisions of Articles 1926 and 1927, Revised Civil Code.

██ The defendants' complaint that they were misinformed, and would not have signed the agreement had they known certain lots were exempted from warranty, finds no support whatsoever in the record aside from their bare testimony to that effect, and we are constrained to believe that their memory is faulty in this matter. The first paragraph of the contract contains the clear statement that the acreage was being sold with full warranty to all lots except those listed on the reverse thereof, and the defendants, owners of several other pieces of real estate in St. Tammany and Orleans Parishes, are shown to be persons not unfamiliar with busines methods. In refutation of the above complaint, the record contains the testimony of several witnesses (Buquoi, his secretary, and a disinterested attorney who accompanied Buquoi to the home of the defendants on Saturday morning), who stated that explanation was made to each of the defendants, before she or he signed the document, to the effect that certain lots, as listed, had been excluded from warranty by the plaintiff. It is significant that the defendants themselves conceded upon trial of the case that when explanation was made, they offered no protest and did not at the time seek to recover the deposit or to withdraw.

██ With respect to the validity of plaintiff's title to lot 33 of Square 22, the record discloses that on September 30, 1910, Adeline Richard purchased ten lots of ground (including lot 33, Square 22) from the Ozone Park Co.; on January 13, 1913, by private act, she sold to Robert Legier "ten certain lots of ground" (acquired by her from Ozone Park Co. on September 30, 1910), but the copy of the original act, as it appears in the conveyance records of St. Tammany Parish, lists only nine lots, number 33 being omitted. The original of this act could not be located. Although search was made, there is nothing to show that Adeline Richard ever sold this lot to anyone else. Testimony of two witnesses, lifelong residents of the locality, was to the effect that Legier went into possession of the lots acquired by him, including lot 33, immediately upon acquisition; that he fenced the land, planted trees and flowers, and held undisturbed, physical, corporeal possession of lot 33 for more than 30 years, then sold it to the plaintiff in 1944 along with the other listed lots acquired from Adeline Richard.

The record contains full proof that with respect to the remainder of the acreage, excepting the lots barred from warranty in the contract, plaintiff and her ancestors in title held by conventional titles, and the defendants no longer seriously contest the validity thereof.

 The contract provides that either party who fails to comply with its terms is obligated to pay the agent's fee and all fees and costs incurred in enforcing collection and damages. No recovery is sought of the agent's fee, and for this reason it cannot be considered. The attorneys for the respective parties stipulated that if Mr. Lindsay McDougall were called, he would testify that in his opinion a reasonable attorney's fee would be $500. Our appreciation of the diligence and ability required for the prosecution of this suit, particularly in view of the fact that the case was appealed here, requiring counsel to file briefs and devote time to argument before this Court, leads to the conclusion that the amount is reasonable.

For the reasons assigned, the judgment appealed from is annulled and set aside; and it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Mrs. Rebecca Samuelson, widow of Samuel Wolfson, and against the defendants, William Bosk and Anna Bosk, in solido, for the sum of Two Thousand Four Hundred ($2,400.00) Dollars, subject to the credit of One Thousand ($1,000.00) Dollars which was deposited with the plaintiff's agent, E. A. Buquoi; plus an additional sum of Five Hundred ($500.00) Dollars as attorney's fees; said sums to bear interest at the rate of five (5%) per centum per annum from judicial demand until paid; plus all costs.