83 So.2d 118

Mrs. Estella DUCUY, Wife of and Murphy Barzart,

v.

Mark J. FALGOUST.

No. 41481.

Jan. 10, 1955.

On Rehearing June 30, 1955.

Rehearing Denied Oct. 4, 1955.

Cobb & Wright; Joseph V. Ferguson, II, New Orleans, for defendant-appellant.

Midlo & Lehmann, New Orleans, for plaintiffs-appellees.

MOISE, Justice.

Mark J. Falgoust appeals suspensively to this Court from a judgment ordering specific performance of a contract, dated September 1, 1952, to purchase two certain lots of ground and the improvements thereon from Mrs. Estella Ducuy, wife of Murphy Bazart, and Murphy Bazart.

Defendant's reconventional demand for the return of his deposit, plus a similar sum and incidental fees, was dismissed.

Mr. and Mrs. Bazart claim to be the owners of the property described as 3017 Benefit Street, located in this city.

On title examination the appellant refused to purchase the property because he was informed, and so believed, that the title thereto was neither merchantable nor marketable and that it possibly fomentated litigation to cure the imperfections in title. Defendant's refusal was predicated on the fact that this property had been sold to Zor, Inc., for unpaid taxes of 1951, and that the attorneys for plaintiffs had been unsuccessful in securing a redemption certificate after tendering to the company an amount for redemption. In refusing to furnish a redemption certificate, the president of the company stated:

"My Directors have instructed me not to execute the attached act of redemption."

Zor, Inc., intervened in the proceedings, contending that the title tendered by plaintiffs was marketable.

On September 23, 1952, after the unsuccessful attempts to secure a redemption deed from Zor, Inc., appellees deposited with the State Tax Collector for the City of New Orleans the sum of $20.04. The deposit was accompanied by letter, a duplicate original of which was recorded in the Conveyance Office for the Parish of Orleans. Thereupon, appellant's counsel, having been informed that a deposit had been made, called upon George Montgomery, Jr., State Tax Collector for the City of New Orleans, to inquire what steps, if any, the Tax Collector would take in amending or re-issuing a State Tax Research Certificate concern-

ing the property in question. Appellant was informed by Mr. Montgomery that on any subsequent "Tax Research Certificate it would be shown that the property had been sold to Zor, Inc. and no mention would be made of a redemption by the appellees." He further stated that subsequent Tax Research Certificates would not reflect that appellees had deposited with him any sum for the purpose of effecting a redemption, and that he could not issue a tax redemption certificate in favor of the appellees *since the title was in the name of a tax purchaser and not the State Tax Collector.*

The learned counsel for appellant has written a most careful brief, in which he outlines various grounds as to his position that the judgment of the district court should be reversed and set aside, but we do not think it necessary to go into any other reason or ground, except those that are necessary for a decision.

The plaintiffs contend that they offered to this defendant a merchantable title not subject to litigation, and they invoked Act 133 of 1928, as amended, LSA–R.S. 47:2222, which reads:

"In all cases where two or more lots or parcels of land have been assessed as a whole without distinguishing the valuation of each lot or parcel separately and have been adjudicated as a whole to a tax purchaser in the name of any one person, the owner or any person interested personally, or as heir, legatee, creditor, or otherwise, may re-

deem a lot or lots or parcels of ground by paying to the tax purchaser the proportionate taxes due thereon together with interests, costs, and five percentum (5%) penalty thereon. The person in interest shall secure a certificate signed by the assessor and approved by the tax collector of the parish in which the property is located, showing the proportion of taxes due on the lot or lots or parcels of land desired to be redeemed.

"The payment required for the redemption of immovable property adjudicated to a purchaser for taxes, may be made either to the purchaser or to the tax collector making the sale, or to his successor in office." See, La.Const. of 1921, Article X, sec. 11, permitting redemption of property.

The plaintiffs rely on the case of Laughlin v. Hayes, 189 La. 707, 180 So. 494. The Laughlin case does definitely hold that redemption may be accomplished in two ways, as shown above, but it does not declare that a redemption deed is not necessary in order to convey title. While there are cases that are not identical to the factual situation herein, there are many cases in which the principle of the law contended for by this defendant has been approved. There are also cases in which legal deficiencies have given rise to a break in the chain of title or a title reasonably suggestive of future litigation, such as we have here.

Mr. Montgomery says that he did not issue an act of redemption because that was a matter left to Zor, Inc., and not to the State Tax Collector. We believe this is correct and that the principle here invoked will be fortified by the following cases: Praegner v. Kinnebrew & Ratcliff, 156 La. 132, 100 So. 247; Lockhart v. Smith, 47 La. Ann. 121, 16 So. 660; Lear v. Great National Development Co., Inc., 215 La. 749, 41 So.2d 668; Schaub v. O'Quin, 214 La. 424, 38 So.2d 63; Marsh v. Lorimer, 164 La. 175, 113 So. 808; Hero v. Bloch, 44 La. Ann., 1032, 11 So. 821; James v. Meyer, 41 La.Ann. 1100, 7 So. 618; Beer v. Leonard, 40 La.Ann. 845, 5 So. 257; Carter v. Morris Building & Land Improvement Association, 108 La. 143, 32 So. 473; Scheuermann v. De Latour, 130 La. 549, 58 So. 223; and Stafford, Derbes & Roy, Inc., v. De Gruy, 172 La. 160, 133 So. 430.

The conclusion impresses itself on our minds that the Legislature of 1954 must have realized that a person whose property had been sold for taxes had a double means of redeeming that property to prevent it from loss, but that he would still be unable to tender a marketable title if the tax purchaser would not give him a redemptive deed. This case will not serve as a precedent in the future, because the law has been changed by Act 598 of 1954, which grants the tax collector the right to execute a certificate of redemption.

It is to be observed that possession of this property passed from appellees to Zor, Inc., at the time of the sale. Thereafter, appellant must assume that Zor, Inc., actually went into possession of the property.

In addition to interest, penalties and cost, the tax purchaser might claim reimbursement for any improvement he has made to the property.

The defendant, by reconventional demand, claims double his deposit. The vendors are not unwilling to comply with the above agreement, but it is the refusal of Zor, Inc., to execute a redemption deed which prevents their being able to convey a marketable title. Under the conditions, we do not think that they can be held for double the deposit and for the payment of certificates furnished. The very contract itself specifies that the cost of the certificates shall be borne by the vendor of the property.[1]

For the reasons assigned, the judgment of the trial court ordering the defendant, Mark J. Falgoust, to comply with the agreement dated September 1, 1952, is reversed and set aside;

It is further ordered that plaintiffs return to the defendant, Mark J. Falgoust, his deposit of $780; that the judgment of the trial court dismissing the intervention of Zor, Inc., is affirmed; that the judgment of the trial court dismissing the reconvention-

---

1. Johnson v. Johnson, 213 La. 1092, 36 So.2d 396, and authorities therein cited.

al demand of defendant, Mark J. Falgoust, is reversed and set aside. All costs to be paid by the plaintiffs.

MOISE, J., concurs.

On Rehearing

FOURNET, Chief Justice.

When this case was before us on original hearing, we reversed the judgment of the lower court ordering the defendant to specifically perform his offer (duly accepted) to purchase property belonging to the plaintiffs in accordance with the contract; dismissed the intervention of Zor, Inc.; and, under the decision of this court in Johnson v. Johnson, 213 La. 1092, 36 So.2d 396, and the authorities therein cited—holding to the effect that unless a party arbitrarily refused to comply with such an agreement he is not liable for the stipulated damages—we rejected the defendant's reconventional demand for double the deposit he made at the time his offer was accepted, and for all costs and fees, but we ordered the plaintiffs to return to him his deposit of $780.

However, on application for rehearing filed by the appellant, Falgoust, our attention was called, for the first time,[1] to the fact that there is, in the jurisprudence, a line of authorities holding to the direct contrary, i. e., that recovery may be had by the other party in case of failure to perform by either party for the amounts stipulated to be forfeited, plus fees and costs, as liquidated damages under the very terms of the contract, even though the failure was not due to arbitrariness or capriciousness.[2]

For this reason we granted a rehearing.

■ Inasmuch as the plaintiffs did not apply for a rehearing, that part of our judgment dismissing the intervention of Zor, Inc., and reversing the decision ordering the defendant to specifically perform the contract is now final. This leaves for our consideration the claims of the defendant under his reconventional demand, i. e., the refund of the $780 deposited by him, plus a like amount, and $149 for the cost of examining the title and securing the necessary and the requisite certificates that were preparatory to the passage of the act of

---

1. In fairness to the author of the original opinion, it should be pointed out that when the case was originally before us, counsel for defendant, without briefing the reconventional demand, merely asserted plaintiffs' failure to take the necessary action to clear the title tendered the defendant rendered them responsible "for double the amount of his deposit as provided in the agreement; for all costs * * * incurred in the preparation for the sale," for attorney fees arising from the defense of the suit, and for all costs in the lower and appellate courts. The only case that counsel for plaintiffs cited was Oubre v. Stassi, La.App., 56 So.2d 598.

2. Smith v. Hussey, 119 La. 32, 43 So. 902; Legier v. Braughn, 123 La. 463, 49 So. 22; Lyons v. Woman's League of New Orleans, 124 La. 222, 50 So. 18; Nelson v. Holden, 219 La. 37, 52 So.2d 240; and Samuelson v. Bosk, 219 La. 477, 53 So.2d 239.

sale, and also for reasonable attorney fees incurred in connection with this suit, all with interest at the rate of 5% from judicial demand.

The plaintiffs, in seeking to maintain our previous judgment, contend that inasmuch as the provisions of the contract with respect to the amount on deposit tracks the earnest money provisions of our LSA–Civil Code, Article 2463, the jurisprudence thereunder[3] is controlling and, consequently, since they have not actively or intentionally "refused" to comply with the agreement, and are, in fact, seeking its judicial enforcement, their inability to perform being attributable to no fault of theirs but to an "inevitable accident, or irresistible force", they are relieved of any penalty liability under Article 2120 of the LSA–Civil Code and the jurisprudence in connection therewith.[4]

It is apt to observe here that under the ancient classical Roman law earnest (*arra* or *arrha* of the Roman law and *arrhes* of the French civil law) served a well understood function for the reason that a sale was one of the consensual contracts; consequently, it was complete at the moment the parties agreed as to the thing and the price, even though the formal transfer was to occur at a later date. Under this concept

earnest was a token of some value or money that was given at the time the parties "struck an agreement" to signify its completion. It was also a pledge of its fulfillment. The sale was, from that moment, complete and irrevocable.

The confusion surrounding the exact function of earnest in sales that exists today wherever the civil law prevails stems from the disagreement among learned judges and legal scholars as to the effect of an enactment of Justinian—providing that if the parties agreed to reduce the contract to writing, its completion was suspended until the writing was duly executed, and if the agreement of sale was followed by the giving of earnest, it might be rescinded by the buyer forfeiting the earnest paid, or by the seller returning double the earnest received —i. e., whether the forfeiture of the earnest and the rescission of the contract applied only to completed contracts,—unwritten sales that were perfect when the thing and the price were agreed upon, or only to incomplete contracts,—those that were later to be reduced to writing.

These divergent views were carried into France, where the controversy was continued over the effect of similar provisions of the Code Napoleon,[5] and despite the di-

3. Johnson v. Johnson, 213 La. 1092, 36 So.2d 396, and the authorities therein cited.

4. Williams v. Hunter, 13 La.Ann. 476; Heeb v. Codifer & Bonnabel, 162 La. 139, 110 So. 178; Ekman v. Vallery, 185 La. 488, 169 So. 521; Niblett Farms, Inc.,

v. Markley-Bankhead, Inc., 202 La. 982, 983, 13 So.2d 287.

5. Article 1589 provided: "The promise of sale amounts to a sale when there exists a reciprocal consent of both parties as to the thing and the price thereof."
Article 1590 provided: If the promise

vergence formerly prevailing, the modern French text writers were in accord in maintaining there was no distinction between a reciprocal promise of sale and the contract itself; consequently, when the promise of sale was accepted, the property was considered as having been at that moment transferred to the purchaser and to be, thereafter, at his risk. These writers also accorded in the view that the provisions of Article 1590 of the Code Napoleon governing earnest were applicable not only to the promise to sell, but also to the completed contracts of sale, provided the faculty of withdrawing was exercised within a certain time following the consensual agreement.

Earnest money under the French law thus came, in time, to have the effect of accomplishing any one of three things, *dependent upon the intention of the parties:* (1) It could be a deposit given to secure to both parties the privilege of withdrawing, (2) it could be a proof of the contract, or (3) it could be part payment of the purchase price. In the absence of evidence as to the role the earnest was intended by the parties to perform, it was presumed to be given to secure the privilege of withdrawing.[6]

Despite this crystallization of the jurisprudence under these two articles of the Code Napoleon, and despite the fact they were, in almost identical language, incorporated in our codes of 1808, 1825, and 1870,[7] we find, in our jurisprudence, much of the same confusion that existed in Rome and France as to the exact function of earnest in the contract of sale, the cases frequently being diametrically opposite. Although Article 9 of the Civil Code of 1808 provided (Article 2462 of the Code of 1870) that "A promise to sell amounts to a sale when there exists a reciprocal consent of both parties, as to the thing and the price", this court refused to consider such an agreement the equivalent of a sale, but did hold it gave rise to a right to specific

to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from said promise; he who has given said earnest, by forfeiting it, and he who has received it, by returning the double."

6. On this entire subject, see the excellent article by Dr. Paul M. Hebert on "The Function of Earnest Money in the Civil Law of Sales," 11 Loyola Law Journal 121.

7. Article 9 of the Civil Code of 1808 provided: "A promise to sell amounts to a sale when there exists a reciprocal consent of both parties, as to the thing and the price thereof; but to have its effect either between the contracting parties or with regard to other persons, the promise to sell must be vested with the same formalities as are above prescribed * * * in all cases where the law directs that the sale be committed to writing." Article 2437 of the code of 1825 and Article 2462 of the code of 1870 are in substantially the same language.

Article 10 of the Civil Code of 1808 provided: "But if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from said promise, to wit: he who has given said earnest by forfeiting it, and he who has received it by returning the same." Articles 2438 of the code of 1825 and 2463 of the Code of 1870 are substantially the same.

performance.[8] This jurisprudence became so firmly imbedded the legislature, in 1920 by Act 27, redrafted the article to conform therewith.[9] On the other hand, the jurisprudence as it developed under the companion article, Article 2463, established that all deposits were presumed to be earnest in the absence of a contrary intention,[10] entitling the parties to withdraw from the agreement,[11] and that where earnest was given, the parties had no right to demand specific performance, being relegated entirely to the forfeiture of the deposit or its double.[12]

Obviously, Article 2463, to be found in the subdivision of the code dealing with the special subject of sales, was incorporated for the specific purpose of mitigating the consequences of those articles to be found under the general rules dealing with obligations, which are to the effect that where the obligation is breached the obligee, in an ordinary case, is entitled to only such damages as have accrued, and when these are inadequate, then to specific performance, at his option, provided it is within the power of the obligee to perform,[13] and is a means whereby the parties relinquish their right to

---

8. McDonald v. Aubert, 17 La. 448, 449; Peck v. Bemiss, 10 La.Ann. 160; and Girault v. Feucht, 117 La. 276, 41 So. 572.

9. Article 2462, as amended and in so far as here pertinent, now reads: "A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same."

10. Collins v. Desmaret, 45 La.Ann. 108, 12 So. 121; Capo v. Bugdahl, 117 La. 992, 42 So. 478; Smith v. Hussey, 119 La. 32, 43 So. 902; Legier v. Braughn, 123 La. 463, 49 So. 22; Maloney v. Aschaffenburg, 143 La. 509, 78 So.2d 761; Terrebonne v. Cheramie, 151 La. 929, 92 So. 388; Bermuda Stock Farms Co. v. Gilliland Oil Co., 155 La. 949, 99 So. 708; Breaux v. Burkenstock, 165 La. 266, 115 So. 482; Buckman v. Stafford, Derbes & Roy, 167 La. 540, 119 So. 701; Livingston v. Southport Mills, 173 La. 120, 136 So. 289. The only authorities to the contrary are Provenzano v. Glaesser, 122 La. 378, 47 So. 688, and Nosacka v. McKenzie, 127 La. 1063, 54 So. 351, based on the Provenzano holding, but the Provenzano case was specifically overruled in Maloney v. Aschaffenburg, supra.

11. Terrebonne v. Cheramic, 151 La. 929, 92 So. 388; Bermuda Stock Farms Co. v. Gilliland Oil Co., 155 La. 949, 99 So. 708; Breaux v. Burkenstock, 165 La. 266, 115 So. 482; Buckman v. Stafford, Derbes & Roy, 167 La. 540, 119 So. 701.

12. Terrebonne v. Cheramie, 151 La. 929, 92 So. 388, and Breaux v. Burkenstock, 165 La. 266, 115 So. 482.

13. Article 1926 provides: "On the breach of any obligation to do, or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given where they have accrued, according to the rules established in the following section."

Article 1927 provides: "In ordinary cases, the breach of such a contract entitles the party aggrieved only to damages, but where this would be an inadequate compensation, and the party has the power of performing the contract, he may be constrained to a specific performance by means prescribed in the laws which regulate the practice of the courts."

compel specific performance, reserving to themselves the right to recede from the contract, in which case they, by their own covenant, stipulate as liquidated damages, the amount that is recoverable for their failure to comply, i. e., the vendee by forfeiting the amount deposited and the vendor by returning the amount deposited with a like amount.

 In the instant case the parties have stipulated by their agreement that "In the event * * * the vendor does not comply with this agreement to sell within the time specified, purchaser shall have the right either to demand the return of double the deposit, or specific performance." [14] Thus it may be seen that the parties did not intend the deposit as earnest. It was not given for the purpose of securing to the parties the privilege of withdrawing from the contract, for neither was free to withdraw. Both specifically reserved to themselves the right to demand specific performance, at their option. The parties have thus contracted in clear and explicit language that leads to no absurd consequences and as there is no suggestion that it is contrary to good morals or public policy, it is the law between them and the court is bound to give legal effect thereto. Article 1945 of the LSA–Civil Code. Consequently, inasmuch as the plaintiffs cannot specifically comply with the agreement they entered into, being without a valid and merchantable title to convey, the defendant is entitled to the return of the $780 deposited by him, plus an equal amount as stipulated damages.

This conclusion necessarily disposes of the contentions of the plaintiffs and we will not, therefore, follow the holding in, the case of Johnson v. Johnson, supra.

It is interesting to note that the holding in the Johnson case was not followed by this court in two subsequent cases where identical contractual provisions were involved, i. e., Nelson v. Holden, 219 La. 37, 52 So.2d 240, and Samuelson v. Bosk, 219 La. 477, 53 So.2d 239. Instead, under the very terms of the contract the prospective purchaser in the Holden case was permitted to recover double the deposit and in the Bosk case was held to have forfeited the deposit, no reference being made to, or cognizance taken of, the prior holding in the Johnson case.

Moreover, a study and analysis of the case of Baton Rouge Investment & Realty Co. v. Bailey, 157 La. 838, 103 So. 184, and of Morgan & Lindsey v. Ellis Variety Stores, 176 La. 198, 145 So. 514, will show that they are not authority for the holding

14. A reciprocal right was reserved by the vendor: "In the event * * * purchaser fails to comply with this agreement within the time specified, the vendor shall have the right, either to declare the deposit, ipso facto, forfeited, without formality and without placing purchaser in default, or the vendor may demand specific performance."

in the Johnson case, in which they are cited, but, rather, are consonant with the subsequent holdings of this court in the Bosk and Holden cases. Both the Baton Rouge case and the Morgan & Lindsey case were decided squarely on the terms of the particular contracts there involved. Neither had a clause reserving to the respective parties the rights to specific performance.

In the Baton Rouge Investment case the contract provided that if the vendor "refuses to make said sale he shall pay to the" purchaser "the sum of Three Thousand ($3,000) Dollars and return the deposit of Three Thousand ($3,000) Dollars herein stipulated."[15] The court, interpreting this provision in the light of the fact that the vendor was unable to tender a good title because he failed to timely clear up encumbrances, concluded [157 La. 838, 103 So. 186] "The stipulation in the contract was that in case the defendant *refused* to make the sale he was to pay plaintiff $3,000 and return the amount of the deposit. Under the circumstances stated we do not think the defendant liable for the additional penalty." (Emphasis supplied.)

A mere perusal of the decision in Morgan & Lindsey v. Ellis Variety Stores, 176 La. 198, 145 So. 514, shows that it is inapposite from a legal or factual standpoint. The suit was instituted by Morgan & Lindsey for the recovery of $5,000[16] deposited with the First National Bank of Lake Providence together with the original contract between the parties whereby this company agreed to purchase from the defendant four "stores," the instruction to the bank being that it was to hold the deposit and the contract until May 17, 1927, subject to the joint orders of the parties, on which date, upon failure to receive such notice, the contract, together with the deposit, was to be turned over to the defendant.[17] While the opinion is lengthy and confusing, when it is read in the light of the decision at the time the case was previously before the court, 168 La. 1073, 123 So. 717, it will be readily seen that although the deposit was labelled in the contract "earnest," the decision did not turn on that law. The court reasoned that inasmuch as it had been given to guarantee the plaintiff would accept the transfer of the property from the defendant and would pay the price subject to the amount on deposit, the plaintiff was entitled to recover the deposit for the reason that the defendant did not timely perform

15. A reciprocal provision declared the deposit was made to evidence the good faith of the purchaser and in the event of his failure to comply it was to be forfeited, "*as liquidated damages*". (Emphasis supplied.)

16. It is to be noted that the suit was not only not predicated on a contract in which the right to specific performance was reserved to the parties, but neither was it a suit for the return of the deposit plus an equal amount for failure to perform by the vendor under Article 2463 of the code.

17. Despite notice from the plaintiff that the contract had not been consummated, the bank turned the contract and the $5,000 deposit over to the defendant.

its obligations under the contract, among which was the obligation to secure the subrogation of its store leases in favor of the plaintiff, a prerequisite to the consummation of the agreement; consequently that plaintiff's obligation to pay the purchase price never arose.[18]

The other authority relied on for the holding in Johnson v. Johnson, i. e., Williams v. Meyers, La.App., 29 So.2d 599, 601, handed down by the Court of Appeal for the Parish of Orleans, does not add strength to the decision, as it was based on the Morgan & Lindsey case, just analyzed, and on two unreported cases from the same appellate court—Puyoulet v. Gherke, Orleans No. 7132, See Louisiana and Southern Digest, and Connor v. Rawlins, Orleans No. 8263, See Louisiana and Southern Digest. In neither of these cases was the right to specific performance reserved by the parties. In the latter case the deposit was made in connection with a bid of property at public auction with which the bidder later refused to comply, and there was, therefore, no specific written contract between the parties. The court, in the former case, instead of deciding the matter in the light of the jurisprudence under Article 2463, which is to the contrary, relegated the prospective purchaser to a suit for the specific damages suffered by reason of the vendor's failure to tender a merchantable title.

We now pass to the defendant's claim for fees and costs, including attorney fees connected with this suit. Under the express provisions of the contract "either party * * * who fails to comply with the terms of this offer * * * is obligated to pay the Agent's Commission and all fees and costs incurred in enforcing collection and damages." Both parties, by their pleadings, have construed this provision to cover attorney fees incurred in the instant suit, as both seek such recovery here. However, inasmuch as this was a matter not passed on by the lower court in view of the court's conclusion that the plaintiffs were entitled to specific performance, and there is no probative evidence in the record on which a conclusion could be based as to the value of the services rendered by the attorney for the defendant, the case will have to be remanded for the fixing of this amount.

However, the defendant did, by competent evidence, establish his right to recover the amount of $149 claimed to be due as the cost of examining the title and securing the requisite certificates preparatory to the passage of the act of sale.

---

18. One of the conditions in the contract was that the sale was to be passed under the Bulk Sales Law, LSA–R.S. 9:2961 et seq., and, consequently, that an inventory was to be taken within 10 days thereof. The defendant contended the inventory was not taken because of the plaintiff's fault, but the court found this was only one of the conditions of the contract, and had not, been, in fact, due to fault of either party, but, instead, to a flood.

For the reasons assigned, the judgment of the lower court rejecting the reconventional demand of the defendant, Mark J. Falgoust, is annulled and set aside, and it is now ordered, adjudged, and decreed that the defendant do have and recover judgment in reconvention against the plaintiffs, Mrs. Estella Ducuy, wife of and Murphy Barzart, for double the amount of the deposit of $780, plus the added sum of $149, all with interest at 5% from judicial demand. It is further ordered that the case be remanded to the lower court for the purpose of fixing the attorney fee of counsel for the defendant. All costs are to be borne by the plaintiff-appellees. The right to apply for a rehearing is reserved to the plaintiffs.

HAMITER, Justice (dissenting in part and concurring in part).

I am unable to agree with the interpretation placed by the majority on the reciprocal clauses of the contract relating to a failure by either party to comply with his agreement. Thereunder, each of the parties, on the failure of the other, may resort to specific performance; or, the vendor has the right to declare the deposit forfeited, whereas the vendee may demand the return of double the deposit.

In keeping with the decision in Johnson v. Johnson, 213 La. 1092, 36 So.2d 396, which I am convinced is sound and correct, I am of the opinion that the mentioned reciprocal clauses contemplate only the occurrence of an arbitrary failure or refusal for the effectuating of the penal provisions thereof. Surely the vendee would not even consider resorting to a specific performance action (he has the right and option of so doing under the clauses) if the failure of compliance is due wholly to an incurable defective title of the vendor.

Moreover, the interpretation decided upon by the majority would seem to result in an anomalous situation in which both the vendor and vendee must suffer the respective penalties stipulated. Since the contract does not require the furnishing of a merchantable title, and there has been a failure of compliance on the part of both parties by reason of the title's defectiveness, the vendee is entitled to the return of double the deposit and also the vendor has the right to retain the deposit.

The cases of Nelson v. Holden, 219 La. 37, 52 So.2d 240 and Samuelson v. Bosk, 219 La. 477, 53 So.2d 239, as I appreciate them, are distinguishable on the facts from Johnson v. Johnson, supra.

Therefore, I respectfully dissent as to the award of double the amount of the deposit. Otherwise, I concur in the decree.

On Rehearing

HAWTHORNE, Justice (dissenting).

I think that the majority is correct in finding that the deposit of $780 made by

Mark J. Falgoust was not earnest because it was not given for the purpose of securing to the parties the privilege of withdrawing from the contract under the provisions of Article 2463 of the Civil Code. However, plaintiffs are not seeking the privilege of withdrawing from the contract, but on the contrary are trying to enforce the contract by instituting this suit for specific performance, and therefore I fail to see the relevance of the fact that the deposit was not intended as earnest.

The majority says that under the clear and explicit language of the contract the defendant Falgoust is entitled to recover not only his deposit but also a like sum from the plaintiffs as a penalty. Thus a penalty is being imposed upon plaintiffs in spite of the fact that they were willing and ready to timely convey title to the property, which Falgoust refused to accept on the ground that plaintiffs' title is suggestive of litigation! In other words, the penalty is being imposed not because plaintiffs are at fault, or have acted in bad faith, or have by any action of theirs encumbered the title, or have refused to comply with the contract; it is being imposed simply because their title has been held by this court to be suggestive of litigation. On the other hand, Falgoust has been relieved by this court of his obligation to purchase because of plaintiffs' inability to tender a title which is not suggestive of litigation, and therefore escapes the penalty and is entitled to the return of his deposit.

The contract which these parties executed is a printed form in general use by the real estate firms and agents in the City of New Orleans. Under the majority holding, no prospective seller should ever execute this form unless he is sure that his title, back to its inception, is free from suggested litigation, for, if it is not, he will not only have to return the deposit received by him but also have to pay a like amount as a penalty, regardless of his good faith and willingness to comply with the contract. I do not believe that those who prepared this printed form ever intended that its provisions should be construed in this manner.

By the contract here under consideration, plaintiffs agreed to sell and defendant agreed to purchase certain property in the City of New Orleans for a stipulated price, title to be passed on or before a fixed date. This is the principal obligation of the contract. The penal provision of the contract, which is its secondary obligation,[1] reads as follows:

"* * * In event that purchaser fails to comply with this agreement within the time specified, the vendor shall have the right, either to declare the deposit, ipso facto, forfeited, without formality and without placing purchaser in default, or the vendor may demand specific performance. * * *

1. See Art. 2117, La.Civil Code.

In the event that the vendor does not comply with this agreement to sell within the time specified, purchaser shall have the right either to demand the return of double the deposit, or specific performance. * * * "

Article 2120 of the Louisiana Civil Code provides that, as the penalty is stipulated merely to enforce the performance of the principal obligation, the penalty is not incurred even though the principal obligation is not performed if there is a lawful excuse for its non-performance, such as inevitable accident, or irresistible force. It is well settled that "inevitable accident" and "irresistible force" are not the only excuses for the non-performance of the principal obligation, but are merely illustrations of what may be considered a lawful excuse. Niblett Farms v. Markley-Bankhead, 202 La. 982, 13 So.2d 287; Williams v. Hunter, 13 La.Ann. 476. In the instant case the plaintiffs' inability to offer defendant a title which is free from suggested litigation is apparently something which they are unable to control or correct, and is therefore in my opinion a lawful excuse within the provisions of Article 2120 which wipes out the penal provisions of the contract. See Williams v. Hunter, supra.

I am of the opinion that the holding of this court in Johnson v. Johnson, 213 La. 1092, 36 So.2d 396, is pertinent and applicable here, because it offers the only just and logical solution to a problem of this kind.