The judgment appealed from is therefore affirmed.

■

(133 So. 430)

### STAFFORD, DERBES & ROY, Inc., v. DE GRUY.

### No. 31029.

March 2, 1931.

Rehearing Denied March 30, 1931.

Legier, McEnerny & Waguespack and Harry McEnerny, Jr., all of New Orleans, for applicant.

Charles I. Denechaud and Ernest J. Robin, both of New Orleans, for respondent.

ODOM, J.

On January 6, 1926, plaintiff and defendant entered into a written contract under which the plaintiff agreed to sell to the defendant, and defendant to purchase from plaintiff, twelve lots in square 80 "on the map of Stafford, Derbes and Roy, Inc." The price agreed upon for the lots was $936, of which amount $78 was paid in cash, and for the balance defendant executed and delivered to plaintiff four notes each for $168 and one for $186; the notes falling due respectively one, two, three, four, and five months from their date, with interest at 6 per cent.

The contract provided that upon the final payment of the notes and interest, if the payments were made in accordance with the terms of the contract, the plaintiff would deliver to defendant a deed to the lots described under guaranty of title of the Louisiana Abstract and Title Guaranty Company. It was further stipulated that in case the defendant defaulted on the payment of any of the notes, all subsequent notes should at once become due and payable and at the option of the plaintiff might either be recovered by a proper action on the notes "or the notes may be returned to the party of the second part (defendant here) and all payments previously made to be forfeited to said party of the first part (plaintiff here) as liquidated damages for the failure to make such payment in whole or in part, notwithstanding the partial performance of this agreement by the party of the second part."

In September, 1928, plaintiff brought the present suit against De Gruy to recover the amount of the notes and interest, less $42 paid, alleging that defendant had defaulted on his contract and that it "is now and has always been and at all times will be ready, willing and able to make and deliver a title to said Raoul V. De Gruy, defendant herein, in accordance with the terms and conditions of said written agreement on the said defend-

ant's performing and fulfilling his part of the agreement."

It prayed for judgment against defendant for the balance due with interest and attorneys' fees.

Defendant admitted in answer that he had agreed to purchase the lots and had signed the notes sued on and set up as a defense that plaintiff was not then in position to make valid title to the lots, for the reason that the map or plat of what is known as the "Kenner Project," of which these lots formed a part and referred to in said agreement for sale as the "map of Stafford, Derbes and Roy, Inc.," had never been filed in the office of the keeper of notarial records of the parish in which said property is situated, and had not been copied in the conveyance record books of such parish as required by Act No. 134 of 1896.

There was judgment in the district court for plaintiff. Defendant appealed to the Orleans Court of Appeal, which affirmed the judgment. 130 So. 889. An application for a rehearing was refused, whereupon relator applied to this court for a writ of review. The writ issued and the record is before us in response to the writ.

The lots which plaintiff agreed to sell and the defendant to buy are described as follows:

"Lots or parcels Nos. 1 to 6 and 47 to 52, Sq. 80, map dated 12/4/25, on the map of Stafford, Derbes and Roy, Inc. land the same in size and location to be in accordance with the map or plan of lots or parcels on file in the office of Stafford, Derbes, and Roy, Inc., copy of which is to be filed in the City Engineer's office of the city of Gretna."

The record discloses that the map or plat referred to had not been filed in the recorder's office of Jefferson parish, where the property is situated, nor recorded in the notarial records thereof.

Under the contract made between these parties, they specifically entered into reciprocal, mutual engagements. What was done, given, or promised by one of them was considered the equivalent to or a consideration for what was done, given, or promised by the other. Civ. Code, arts. 1765, 1768. Plaintiff's engagement under the contract was to sell and deliver to defendant certain real estate upon condition that defendant pay therefor a stipulated consideration by a certain time. The contract is a conditional agreement to sell and to buy. Either party has a right to enforce specific performance on the part of the other if he himself is in a position to perform his part of the engagement. But neither has a right to enforce specific performance on the part of the other unless he himself is able to perform. Civ. Code, Art. 1913.

If, therefore, plaintiff is unable to perform its engagement by delivering the property to defendant with good and valid title, he cannot legally compel defendant to pay the price, because one who pays the price of a thing is entitled to the thing. Plaintiff recognizes this to be true, for it specifically alleges in paragraph 6 of its petition that it is now the record owner of the property and that it is not only willing but able to make title in accordance with the terms and conditions of the said written agreement.

But plaintiff was not able to perform its engagement on the day it called upon defendant to perform by paying the notes. It had not filed and recorded a plat of the property as required by Act No. 134 of 1896 and Act No. 80 of 1922.

Section 1, Act No. 134 of 1896, page 189, provides that whenever an owner of real estate situated within this state shall desire to lay the same off into lots with streets, with intention of selling any of said squares or lots "it shall be the duty of such owner or owners of

such real estate, before selling any square or lot or any portion of same, to cause to be made and filed in the office of the Keeper of Notarial Records of the parish wherein such property is situated and copied into the Conveyance Record book of such parish, a correct map of the real estate so divided, which said map shall contain the following: 1. The section township and range in which such real estate lies or subdivision thereof according to government survey."

Section 2 of the act makes it a misdemeanor for any person to violate its provisions. Section 3 reads as follows:

"3. Be it further enacted, etc., That it shall be the duty of all clerks and ex-officio recorders and notaries public in all the parishes of this State, the Parish of Orleans excepted, to refuse to place on record any deeds of sale of property coming under the provisions of this act, until the provisions of this act shall have been complied with; and to report to the District Attorney all violations of this act."

Act No. 80 of 1922 provides the method to be followed in surveying and platting into lots lands outside the limits of incorporated municipalities and requires the owner "to have such plat or a certified copy thereof or duplicate filed and recorded in the office of the Clerk and Ex-officio Recorder in and for the Parish in which said land is situated; and a duplicate thereof filed with the Assessor of such Parish; and it shall be unlawful for any such person, firm, association or corporation to sell any of said lots or blocks until such plat has been so filed and recorded." Section 1.

Section 2 of the act makes a violation of its provisions a misdemeanor.

A sale of these lots by plaintiff would therefore be an unlawful act and subject the agents of the corporation to a criminal prosecution.

Furthermore, under section 3 of the act of 1896 it is made the duty of all clerks and ex officio recorders to refuse to record any deeds of sale of property coming under the provisions of the act until such map or plat shall have been recorded. So that if plaintiff or its agents were willing to take chances of being criminally prosecuted for violating the provisions of these laws by executing the deed, defendant would be powerless to protect his title by registering it. The purpose of registering deeds in the notarial records is to give notice to third parties. A deed to real estate if kept off the records is no more effective against third persons than a blank sheet of paper. The only way a vendee can protect his title is by registering his deed. If he can not register his deed his title is worthless.

The manifest purpose of these laws was to protect purchasers of lots in cases of this kind. The act of 1896 (section 1, subd. 1) specifically requires that the map or plan of the property subdivided shall contain "the section township and range in which such real estate lies or subdivision thereof according to government survey." The act of 1922 (section 1) requires the party subdividing land into lots or blocks "to write the legal description of said land on said plat."

A designation of the government subdivision in which lots or parcels of ground are situated is of vital importance. When lots of a subdivision are sold they are described with reference to a map or plan and usually the date of the plat and the place of its recordation are referred to. In the present case the lots are designated by number "on the map of Stafford, Derbes and Roy, Inc.," which is to be filed in the city engineer's office in the city of Gretna. But the contract to sell does not state where the subdivision or the lots are located, the parish not being designated.

The map filed in evidence bears the following legend on the margin at the top:

"Subdivision of Property .
"(First National Bank of Columbus Ohio.)
"Kenner Project
"Jefferson Parish, Louisiana.
"Stafford, Derbes & Roy, Inc.
"(Owners—New Orleans.)"

On the margin at the left we find "Sec. 2," at the bottom "Sec. 3," and at the right "Sec. 4." But the map nowhere shows in what township or range the property is situated, nor are there any boundaries shown by which the governmental subdivisions could be located. An examiner of titles if he had before him the map and a description of the lots as shown by the contract could not tell in what portion of Jefferson parish they were situated.

The record discloses that Stafford, Derbes & Roy, Inc., owns these lots and that the property was on the date the suit was filed unincumbered. But a deed from it to defendant conveying the lots under the description contained in the contract would not protect him as against those who might purchase from the vendor the land described according to legal governmental subdivisions or from its judgment creditors, for the reason that the records would disclose no notice that this "Kenner Project" and these lots were situated in such governmental subdivisions. But the filing and recording of a map in the recorder's office showing on its face that a part of a designated governmental subdivision of lands had been subdivided into lots would be notice to third parties, and that is the very purpose of these acts. Vendees of lots in a case like this would be wholly at the mercy of the vendors without the filing and recording of the map or plat required by the statutes, for such vendor might sell or mortgage the whole of the property by governmental subdivisions.

The Court of Appeal seems to have conceded that without the filing and recording of the map as required by the two statutes, plaintiff could not convey valid title to the lots, but was of the opinion that defendant was premature in urging that defense. The court said (130 So. 889, 890):

"It may well be that, when the obligation of the defendant under this agreement has been met, the plaintiff will be able to comply with the terms of the Acts of 1896 and 1922 referred to by counsel, and then be in a position to tender a title which the abstract company will be willing to guarantee and defendant willing to accept, thus discharging its obligation under the contract. Should it develop hereafter that the plaintiff is unable or unwilling to comply with its undertaking under the agreement to sell, the defendant would not be without remedy, and the objections raised in this case would then be pertinent and perhaps decisive of the issue in appropriate litigation. At this time, however, we believe this point to be premature, because it may develop that when title is offered to defendant the provisions of the two acts shall have been complied with and a guaranty bond offered, in which event, as we view the matter, the defendant would be without cause of complaint under his agreement to purchase the property involved in this litigation."

We think the Court of Appeal erred. Plaintiff's right to demand specific performance of the contract on the part of the defendant depends, not on what it may hereafter be able to do, but upon what it was then able to do. Perhaps, as the Court of Appeal said, "It may develop that when title is offered to defendant the provisions of the two acts shall have been complied with," but defendant cannot know that such will be done. Plaintiff has not offered to file and record the

map but, on the contrary, contends that it is not incumbent upon it to do so, as the acts referred to do not apply in this case. Evidently plaintiff does not intend to record the map. Otherwise, it would have done so when it was informed by defendant's answer that he refused to comply because the map had not been recorded.

Counsel for appellee cite the case of Metairie Park, Inc., v. Currie, reported in 168 La. 588, 122 So. 859, 861. That case is similar to the one at bar. One of the defenses there urged was that the map or plan had not been filed or recorded in compliance with Act No. 134 of 1896, but with reference to this defense we said:

"The Coleman plan was on file in the office of the register of conveyances in the plat book, but was not copied in the conveyance book. The plan was actually filed in a book which was part of the conveyance records of the parish of Jefferson. In our opinion, this is a substantial compliance with the act, as such filing is in legal effect a recordation of the plan, as much so as the filing of a deed in a conveyance office is considered a registry of the deed."

Plaintiff was not in position to make valid title to the lots because a plat had not been recorded, and inasmuch as it refused to record a plat made in accordance with the acts of the legislature above referred to, it has violated its contract and is not in position to enforce specific performance on the part of defendant.

■ Defendant reconvened for the amount he had paid on the contract and asked that the notes which he signed be cancelled and returned to him. Inasmuch as plaintiff is not in position to carry out its part of the contract, it should return to defendant the amount be paid thereon (defendant does not ask for interest) as well as the notes.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment of the Court of Appeal and that of the district court be reversed, and it is now ordered and decreed that plaintiff's demands be rejected and its suit dismissed at its costs in all courts.

It is further ordered, adjudged, and decreed that defendant Raoul V. De Gruy have judgment in reconvention against the plaintiff Stafford, Derbes & Roy, Inc., in the sum of $120, the amount paid on the contract, and that it be and is hereby ordered to cancel and return to said Raoul V. De Gruy the notes signed by him in connection with the contract here involved.