130 So.2d 738 (1961)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
James G. BOYER et al., Defendants-Appellees.
No. 64.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1961.
Rehearing Denied June 13, 1961.
*739 Norman L. Sisson, Baton Rouge, for plaintiff-appellant.
Jones, Kimball, Harper, Tete & Wetherill, by William R. Tete, Lake Charles, for defendants-appellees.
Before TATE, FRUGE and SAVOY, JJ.
FRUGE, Judge.
This suit was brought by the State of Louisiana, through the Department of Highways, to expropriate for highway purposes certain land belonging to defendants James G. Boyer, J. Norwell Harper, and William R. Tete. The expropriation was sought under the provisions of LSA-R.S. 48:441-48:460. The order of expropriation was signed on December 16, 1957.
*740 On the trial on the merits the issue was the value of the property expropriated. There was judgment for the defendant and the State has prosecuted this appeal from that judgment. Consequently the sole question before us is the determination of the value of the property.
The property taken by plaintiff is a tract of land in Calcasieu Parish containing 8.261 acres, being a portion of a 15 acre tract theretofore owned by defendants. The property is located about mid-way between Sulphur and Lake Charles, approximately one and one-half miles south of U. S. Highway 90. It is in an area where a number of residential subdivisions have been developed, and it is within two or three miles of a number of large industrial plants. The subject 15 acre tract is located along the west side of a heavily travelled, hard-surfaced thoroughfare known as Cities Service Highway. It is bounded on the north by a developed and partially occupied residential subdivision known as Oak Ridge Subdivision, and on the south by a right of way for a public road, which right of way has been created but has never been used as a public road or street. The property was suitable for residential purposes although no homes had been constructed on it prior to the time of taking.
The plaintiff contends that at the time this suit was instituted the value of the land and improvements was $16,552 and that no severance damages were sustained as a result of the taking. The appraisers called by plaintiff considered the subject property to be undeveloped acreage and they appraised it as such. Defendants contend that the value of the property taken and severance damages amounted to $69,391.94. The witnesses and experts called by defendants considered and appraised the property as an existing residential subdivision. The substantial difference in the values placed on this property by the experts for both parties is due to this difference of opinion as to how the property should be classified.
There is no dispute in the basic facts as found by the trial judge. The trial judge found that:
"* * * The evidence establishes that in 1950 defendants, through an agent, acquired a 20-acre tract of land which included the subject property. During that same year, and in connection with an act of partition relating to this land, defendants executed and recorded a formal dedication of a street running east and west along the south boundary of the subject property.
"In 1953 defendants joined with owners of the Indian Hills Subdivision, which adjoined defendants' 20-acre tract on the north, in dedicating a public street known as Cherokee Street running east and west along the north boundary of this tract. Immediately after this street was dedicated defendants sold to Clausen and Christian a strip of land, being about the north five acres of this 20-acre tract, and in that sale defendants required that the purchasers impose restrictive covenants on the land to be used for residential purposes and that the streets be dedicated through the property at designated locations so that they could be joined with corresponding streets in the remaining property retained by defendant. The strip of land sold to Clausen and Christian in 1953 was developed as a residential subdivision, consisting of 15 lots all of which face Cherokee Street on the north, which subdivision is known as Oak Ridge Subdivision. At the time of the taking three residential buildings were located on lots in this subdivision, and all utilities were made available to this property.
"In April, 1955, defendant Harper, with authority from the other defendants, prepared a freehand plat dividing the remaining 15-acre tract owned by defendants into lots and blocks, and laying out public streets for a subdivision, which freehand plat was made *741 for the information of engineers and contractors in preparing an official plat for creating a subdivision. In May, 1955, defendants entered into a contract with Carlton Moss, under the provisions of which Moss agreed to clear the property and grade streets and ditches for drainage, all of which was to be done for a consideration of $3,287.40.
"In August, 1955, the freehand plat prepared by one of the defendants was delivered to the engineering firm of D. W. Jessen & Associates, and members of that firm subsequently surveyed the land and staked out block corners and streets in accordance with that survey. During the following month the same engineering firm made a topographic survey and prepared a drainage sketch for use by the Contractor in providing drainage for the subdivision.
"The clearing of the property and the grading of streets and drainage ditches was completed by Carlton Moss on or about October 5, 1955, and defendants paid him the amount which they had agreed upon for that work. The streets grade[d] or constructed by Moss under the terms of this contract included two streets running east and west and two streets running north and south through the subject property.
"A formal plat subdividing the property into lots and blocks was not completed by the engineering firm of D. W. Jessen & Associates until October 16, 1957, which was prior to the taking, but was after defendants had been informed that a portion of the property which they owned in that area would be taken for highway purposes. The plat which was prepared at that time, however, was in exact accordance with the freehand plat made by Mr. Harper in 1955, and purported to divide defendants' 15-acre tract into blocks and lots, containing a total of 45 lots, facing on the streets which had been graded by Moss. Neither this plat nor any other plat subdividing the subject property into lots and blocks, however, has been recorded in the Conveyance Records of Calcasieu Parish. Defendants explain that they did not proceed to file the plat or to sell lots because shortly after the property was cleared and streets were constructed they learned that a portion of the land likely would be expropriated.
"Plaintiff by this proceeding has taken all of the area covered by 25 lots and a portion of 10 additional lots shown on the plat prepared by D. W. Jessen & Associates on October 16, 1957. The property taken also includes some of the areas designated as public streets on that plat. The area left to defendants after the taking includes ten lots in their entirety, the major portion of ten additional lots and some areas which have been designated on that plat as public streets.
"Messrs. Moses S. Abelman and Jules Reinauer, real estate experts called by defendants, classified the subject property as `an existing residentail subdivision,' at the time of the taking, and in appraising that property they considered as comparable sales the transfer of lots in other subdivisions. They appraised the subject property on a front footage rather than on an acreage basis. In their opinions the lots taken in their entirety had a value of $18.49 per front foot, and the lots partially taken had a value of $4.00 per front foot, making the total value of all property taken $37,897.00. They further testified that in their opinions the severance damages sustained by defendants amounted to $21,639.00 if no access was provided to the residual, or $7,260.00 if access is provided. The evidence convinces me that access to the residual will be provided, so I interpret their testimony to be that defendants *742 will sustain severance damages amounting to the smaller figure.
"Messrs. George B. Hines, Jr., and John G. Love, real estate experts called by plaintiff, concluded that the highest and best use of the subject property was for `a potential subdivision for immediate development.' As comparable sales they used principally those relating to property which at the time of the sales had not been developed into residential subdivisions. They valued the property taken at $2,000.00 per acre, making a total appraised value of $16,522.00, and they concluded that defendants sustained no severance damages as a result of the taking.
"Mr. Hines testified that if the defendants had filed a plat subdividing the property into lots and blocks at any time before the taking he would have appraised the property as a subdivision, and that the filing of such a plat would have materially affected his appraisal. A portion of his testimony is as follows:
"`Q. Mr. Hines, as a matter of fact did you not inform Mr. Harper on several occasions that if the owners of this land had filed a plat you would have appraised it as a subdivision? A. Yes, sir.
"`Q. Then if a plat had been filed showing the streets and blocks as they were actually staked and constructed and showing the same lots that are shown on the location plat which has been attached to the answer in this case and which I'm sure you've seen, would you have appraised the property as a subdivision? A. It certainly would materially have affected my appraisal.
"`Q. Would you have appraised it as a subdivision? A. Yes, sir. Well, I'd have had to consider what was not in the subdivision, but if a plat had been recorded showing lot and block numbers, I would have recognized it as a subdivision from the recordation.
"`Q. In other words you would have appraised it as a subdivision taking into consideration the same factors as Mr. Reinauer and Mr. Abelman testified that they took into account, that is, what had not been done. A. I would have considered those factors. Whether they would have been the same or not would have been a matter of approach.
"`Q. But you would have appraised it as a subdivision. A. Yes, sir.'
"Mr. Hines also testified that at about the time this property was taken he appraised the lots located in Oak Ridge Subdivision, which immediately adjoins the subject property, at $25.00 per front foot, and that plaintiff paid that amount for those lots. Utilities, of course, had been provided to the lots in that subdivision. They had not been provided for the subject property, although they were readily available.
"Mr. Love testified that he used substantially the same comparables and the same procedure in making his appraisal as were used by Mr. Hines, and that he would be willing to accept Mr. Hines' testimony as his own." * *
The plaintiff in classifying the property as a potential subdivision for immediate development, but not as a subdivision, relied upon the fact that a plat of survey of the property had not been recorded and filed. They maintain that a plat of the proposed subdivision must be recorded in order to convert acreage to a subdivision and before any person can consider the acreage as a subdivision, citing LSA-R.S. 33:5051 and the case of Stafford, Derbes & Roy, Inc. v. DeGruy, 172 La. 160, 133 So. 430. LSA-R.S. 33:5051 provides that:
"Whenever the owner of any real estate desires to lay off the same into *743 squares or lots with streets or alleys between the squares or lots and with the intention of selling or offering for sale any of the squares or lots, he shall, before selling any square or lot or any portion of same, cause the real estate to be surveyed and platted or subdivided by a licensed surveyor or civil engineer into lots or blocks, or both, each designated by number, and set stakes at all of the corners of every lot and block thereof, properly marked so as to designate the correct number of each lot and block * * *" (Emphasis added.)
We do not agree with the interpretation placed upon this statute by plaintiff. The only requirement is that the owner record the plat before selling any square or lot or portion of the property. The recordation of the plat is not a sine qua non in the creation of a subdivision. Cf. Caddo Parish School Board v. Willer, 227 La. 201, 78 So.2d 833. The case relied upon by plaintiff is not authority for that proposition. The facts, circumstances, and the situation surrounding the property are to be considered, and are determinative of the type of property that is sought to be expropriated. The statute is not a prohibition against appraising property as a subdivision before recordation of a plat, but rather the prohibition is against selling property without the recordation of a plat. The record discloses that roads and ditches had been cut; the boundaries had been set out; the streets were laid out and staked; that two streets had been dedicated; that estimates as to the cost of bringing in utilities, i. e. water, electricity and gas had been obtained; cost of shell for the streets had been obtained; an engineering firm had been employed and a work order actually given for completion of surveying and measuring out of the lots. The evidence further discloses that when defendants learned that part of the property was going to be expropriated they discontinued their preparations for finishing the subdivision. Mr. Reinauer testified that "all that remained was the final word to proceed * * * and I believe that on any given day the plat could have been recorded, the lots could have been staked and the lots could be sold, and for the above reasons I arrived at the decision that the property was a subdivision and could be sold as such."
In the case of Plaquemine Parish School Board v. Miller, 222 La. 584, 63 So.2d 6, 8, it was said that:
"Whilst the fact that a piece of property may, at some time, become available for residential subdivision purposes, can be taken into consideration in fixing its market value in expropriation proceedings, it should be made to appear that there is some reasonable expectation that it might be so developed in the not too far distant future. It will not do for the owner to say that at some indefinite time it is foreseeable that this property, because it adjoins a growing town, will have an added value as a subdivision project."
See Koerber v. City of New Orleans, 234 La. 433, 100 So.2d 461. Here it appears that there is a reasonable expectation that the property would have been developed had it not been that the defendants stopped their progress in creating a completed subdivision on determining that part of the property was going to be taken for highway purposes. The record conclusively shows that the property was properly classified as a subdivision.
The trial judge found that:
"In this case I am convinced that at the time of the taking the subject property had been developed to the extent that a willing seller and a willing buyer would have arrived at an agreement as to price based on an amount per front foot, rather than on an acreage basis, even though a plat subdividing the property into lots and blocks had not been recorded. The *744 market value of the tract taken, therefore, should be computed on a front footage basis rather than on an acreage [basis], whether the subject property technically may or may not be designated as a subdivision."
It is an oft stated rule that in determining the amount to be paid for property expropriated, the test is market value, plus damage caused by separation of that taken from what remained. Market value, which must be paid on expropriation of property, is the fair value between one who wants to purchase and one who wants to sell, under ordinary and usual circumstances. See Plaquemine Parish School Bd. v. LaGrange Realty, La.App., 101 So.2d 634, and cases there cited. And all available uses to which the land might be put must be taken into consideration as well as all factors which lead to a replacement of a loss caused by the taking. See State of Louisiana through Department of Highways v. Ragusa, 234 La. 51, 99 So.2d 20. Such future use cannot be remote, nor speculative, and must be not only possible, but probable. See La.Law Rev., Volume XVIII, at page 551, and Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491. Most important in determining market values are sales of similar or comparable properties in the neighborhood. If evidence of similar sales is not available, the value of the land expropriated must be determined by other means, generally the testimony of experts. The testimony of each expert should be given effect if that testimony is well reasoned and sincere. However, if the expert testimony impresses the court unfavorably, it will be disregarded. See State through Dept. of Highways v. Hub Realty Co., 239 La. 154, 118 So.2d 364 and State through Dept. of Highways v. Stoer, 238 La. 718, 116 So.2d 498. The case at bar is readily distinguishable from the case of Parish of Iberia v. Cook, supra, where it was said that [238 La. 697, 116 So.2d 495]:
"* * * Defendant's witnesses envisage a sixty-foot paved roadway leading from Highway 90 to its full length to the bayou, thus affording sites of 40 feet in width facing the roadway and hospital grounds * * *. It is obvious therefore that the proposed construction of this sixty foot roadway would leave commercial sites of 40 feet in depth, and accordingly these proposed sites would constitute the sole value of the subject property. * *
"* * * A street along the property from Highway 90 to Bayou Teche might allow the erection of a development facing the hospital thus making the land more valuable, but at the time of the institution of these condemnatory proceedings no street existed, no plans were prepared, and there was no subdivision contemplated. The value which defendant's witnesses have placed on the property, based as it is on such speculative and illusory factors, is unacceptable." (Emphasis added.)
In the case before us a subdivision was contemplated as evidenced by the preparations hereinabove mentioned, that is, streets had been laid out, drainage ditches dug, estimates for shell, gas, water, and electricity taken, stakes driven at the block corners and engineers engaged in drawing a plat of survey.
The trial judge treated the property as being residential or subdivision property. He found that the highest and the best use to which the property could be put was subdivision property. For that reason he relied heavily upon the testimony of defendant's witnesses and experts, since the defendant's experts used as comparables the sale price of other subdivision property in and around the immediate vicinity of the property in question. He did not accept the testimony of the experts for the plaintiff because they admittedly used as comparables in their determination of the value of the property other sales which were of acreage in the vicinity of the property in question as distinguished from the comparables *745 used by the defense experts. Opinions of qualified experts are of material aid and should be given weight and effect, particularly where those opinions appear to be well grounded from the standpoint of sincerity and logic. State v. Ragusa, supra. However, in considering testimony of experts, the testimony of each witness so qualified and accepted as an expert should be given effect if and when it appears to be well grounded from the standpoint of sincerity and good sense. See Parish of Iberia v. Cook, supra, and State through Dept. of Highways v. Stoer, supra, and State through Dept. of Highways v. Hub Realty Co., supra.
The trial court's factual determination as to the value of property expropriated, reached after hearing the witnesses will not be disturbed in the absence of manifest error. See State through Dept. of Highways v. Ragusa, supra, and Orleans Parish School Board v. Paternostro, 236 La. 223, 107 So.2d 451. For that reason we adopt its factual finding as follows:
"Since the experts called by plaintiff valued the adjoining lots in Oak Ridge Subdivision at $25.00 per front foot and plaintiff paid that amount for them, I assume that plaintiff must concede that that figure represents a fair value for those lots. The lots in Oak Ridge Subdivision have a greater value than those in the subject property, however, principally because of the fact that utilities have been provided for those lots, the construction and surfacing of streets have been completed, and some houses have been constructed. After making adjustments for these differences, I am convinced that the market value of the subject property was $18.49 per front foot at the time of the taking as valued by the experts called by defendants. The 25 lots taken in their entirety have a total front footage of 1892.5 feet, making the total value of those lots $34,992.33. The north 11.35 feet of ten additional lots were taken by plaintiff. Since this amounts to almost ten percent of the area covered by those lots I conclude that the value of that portion of the property taken is one tenth of the value of the entire lots. The front footage of these ten lots if 728.5 feet, which computed at a value of $1.849 per foot gives that portion of the property taken a value of $1,347.00. The total value of all the property taken, therefore, amounts to the aggregate sum of $36,339.33."
In determining severance damages the trial judge found that:
"The property remaining to defendants after the taking, consisting of ten lots in their entirety and the major portion of ten additional lots, will be separated from the other development in that area by a no-access highway, it will be difficult and expensive to get water and gas across that highway to this residual, and it will be almost prohibitive to provide this remaining property with sewerage which was easily available to it prior to the taking. In view of these facts, and after considering the original value of this residual, I conclude that defendants are entitled to severance damages in the amount of $7,260.00, as estimated by Messrs. Abelman and Reinauer."
Plaintiff contends that benefits derived from improvements constructed adjacent to the property expropriated may be set-off against severance damages and cites State v. Cooper, 213 La. 1016, 36 So.2d 22; and Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654, as authority therefor. We readily adhere to that proposition where it is applicable, i. e. where the benefit is a "special" one. See Louisiana Highway Commission v. Grey, supra; State v. Cooper, supra; LSA-C.C. Art. 2633; LSA-R.S. 19:9; Louisiana Law Review, Volume XXVIII, at page 554; and Parish of East Baton Rouge v. Edwards, La.App., 119 So.2d 175. However, in the case at bar, we find, as did the trial judge, that *746 the value of the remaining property was not enhanced, that is, no special benefits were acquired, but rather the property was damaged to the extent determined hereinabove.
For the foregoing reasons the judgment of the trial court is affirmed. Plaintiff-appellant to pay all costs.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., recused.