MILLER, Judge pro tem.
This appeal is by the State of Louisiana, through the Department of Highways, from an adverse judgment in an expropriation proceeding ordering the Department to pay the defendants (Mrs. Edna Dawson Fridge, Mrs. Pearl Fridge McMahon, and Rhett Russell McMahon) an additional $5,750 plus 5% per annum interest thereon from November 20, 1957, the date of the expropriation, and $950 for costs and expenses of the defendant’s appraisers and $50 as an expert witness fee for the architect. The Department of Highways had originally deposited $14,150 as just compensation for the property expropriated. The property that was the subject of this expropriation was to be made a part of the Baton Rouge expressway.
The expropriated property is within the limits of the City of Baton Rouge at 901 Convention Street and is a corner lot measuring sixty-four feet front on the north side of Convention Street by a depth along the east side of North Ninth Street of eighty-eight feet and is near the main business district. The property was zoned “C”, Multiple Dwelling which meant that it was available for use not only as a residence, but also for apartments, offices, hospitals and clinics. The improvements were described by Lowell M. Roseman, the expert appraiser for the Highway Department, as being: “approximately sixty years of age; it had space heaters; 2370 square feet on the first floor, 574 on the second; the porches had 330 square feet and the carport 460 square feet. * * * (it was) a one and a half story frame house with ten rooms and three baths; brick peers, six by six sills; joists two by twelve, twenty-four inches on center ; no subflooring or storm sheeting; drop siding and beveled cypress siding; rafters two by six, twenty-four inches on center; the roofing was metal shingles and two-ten pound asphalt shingles (It was not one over the other, it was one, part in one place and part in another.) ; it was partially guttered; *327 it had an open front porch; the interior floors were pine, the kitchen was pine, the bath had linoleum. The walls appeared to be paper on sheetrock or paper on plaster, I couldn’t determine positively. The trim was plain pine. The interior of the house was in poor condition. There were three baths, all old style fixtures with linoleum floor, painted Masonite wainscoting. The kitchen had beaded ceiling, wainscot and small cabinets. One kitchen had paper on sheetrock or plaster, with no cabinets. There was a carport attached to the west side of the house that had wood supports, concrete floor and rolled roofing.”
The two expert appraisers who made the original appraisal for the state were Lowell M. Roseman and Bradley C. Mittendorf. Both were called as witnesses for the state, however, due to the illness of Mittendorf, only the testimony of Roseman was used, it being stipulated that had Mittendorf testified, he would have corroborated Rose-man’s testimony.
The defendants employed Richard A. Erbland, George B. Dean and James T. Amiss as expert appraisers to appraise the property and Roy J. Haase, an architect and housebuilder, to testify concerning the replacement value of a home such as the one expropriated.
Two of the appraisers for the defendant, Dean and Erbland, submitted detailed written reports of their respective analyses of the fair market value of the subject property. The trial court properly allowed these reports into evidence. These detailed reports contained the qualifications of the appraisers, the location and exact legal description of the property in question, gave the date and purpose of the report, and set forth what could reasonably be expected from a ready and willing buyer and seller on the sale of the property. The reports also set forth a detailed description of the home, the improvements on the property, the neighborhood and the opinion of the appraisers as to the highest and best use of the property. Each report presents much detail to substantiate the appraisal made from three distinct but recognized methods of appraisal — the replacement less depreciation approach, the market data or com-parables approach and the income approach. Dean summarized his findings as follows:
Replacement less depreciation-$20,100.
Market date (comparables).$19,900.
Income-$19,000.
Erbland summarized his findings as follows:
Replacement less depreciation-$26,500.
Market date (comparables)-$22,000.
Income-$19,000.
Dean concluded that the market data approach (comparables) was the most accurate and therefore used the value of $19,-900 as his opinion of the market value of the property. Erbland agreed that the market value approach was usually the most accurate, but in this case leaned to the lower valuation reached by using the income approach and therefore valued the property at $19,000.
Defendants’ third expert appraiser, James T. Amiss, appraised the property at “$20,600 for the land alone, forgetting the improvements,” based on a comparison of this property with “the Hatcher property” which is located only 228 feet from this property. The Hatcher property contained 8,192 square feet of land and was purchased for $30,000 on March 27, 1956. The purchaser demolished the improvements and constructed a residence on the site.
The State’s experts, Roseman and Mit-tendorf, were of the opinion that the comparable sales method was the most accurate and used this method in fixing the market value as of November 20, 1957 at $14,150.
It is well settled that the sale of similar properties in the vicinity of the expropriated property, known as the “comparable” is the best criteria for market value of property taken in expropriation proceedings. State, Through Department *328 of Highways v. Hub Realty Company, 239 La. 154, 118 So.2d 364; State, Through Department of Highways v. Stoer, 238 La. 718, 116 So.2d 498; Caddo Parish School Board v. Bland, 228 La. 393, 82 So.2d 687; State of Louisiana, through the Department of Highways v. Hebert, 227 La. 111, 78 So.2d 528.
The different valuations placed on the property by the expert appraisers are due to the fact that different comparables were used. Mr. Dean used as comparable sales the Major property, which was just across the street from the subject property; tile Hatcher property, which was located only one short block away; the Marks property, a block and a half; the Kahn property, two blocks; and the Stanocola Medical Association property, but three blocks away. Dean carefully reported the value factors in each of said sales, made adjustments for sale dates, sizes and improvements in order to make the most accurate comparison for value.
Mr. Erbland’s report was made independently of Dean’s report. He referred to the sales of the Major property, the Hatcher property, and of the Kahn and Marks properties. After allowing conservative adjustments, Erbland fixed the market value.
Mr. Roseman, and by stipulation it was agreed that Mr. Mittendorf would have so testified, considered that the Major property, located across the street, was the only comparable used by defendants’ experts which was acceptable to him. He rejected the Hatcher sale as being suspicious, the Kahn and Marks sales as being too remote in time, and the Stanocola Medical Association property as being much larger and more favorably located. As his compara-bles, Roseman in addition to the Major property, referred to sales of the properties located at 1133 North Boulevard; 637 St. Ferdinand Street and 224 North Twelfth Street. These properties range in distance from over three blocks to over twelve blocks from the subject property.
We adopt the reasoning of the trial court concerning the refusal of Roseman and Mittendorf to consider the Kahn and Marks sales as comparables. “Their objection to the Marks and Kahn property is as to the date of the sale, some five and a half years ago, and their opinion that the Presbyterian Church, vendee in each case, was in effect forced to purchase these properties. In my opinion the fact that the two properties are in the immediate vicinity of the subject property is more important than the dates of the sales, particularly in view of the fact that there is no evidence of any material change in property values in that immediate area since the year 1952. * * * In this case * * * I have never heard any evidence that there has been any decrease in (the value of) property since 1952, and as to the church being forced to purchase these properties, it appears to me that it might as well be contended that the owners were in effect forced to sell these properties. * * * In other words, I see no reason why the Marks property and the Kahn property are not suitable to use in the market data approach.”
The reason given by Roseman for his refusal to consider the sale of the Hatcher property as a comparable was that although the property was purchased by the Hatchers in 1956 for $30,000, the record shows that their vendor purchased it in 1954 for $13,000. For this reason the Highway Department’s experts look upon the Hatch-er purchase with suspicion. As noted by the trial court, these experts did not look with suspicion on the sale to Hatcher’s vendor in 1954. Also the trial court noted that this same sale had been considered in evidence in other cases and there has not yet been any evidence to show that the sale was not one between a willing buyer and a willing seller. The record does not show that the trial court erred in permitting the appraisers to use this sale as a comparable.
The Highway Department argues that the experts used by the defendant and *329 plaintiff were equally well qualified and that the court should have given equal weight to the opinion of each expert. We agree that the experts employed by the Highway Department were equally well qualified, but the rule that the court should consider opinions of all experts in determining true value of the expropriated property properly applies only when the opinions are well grounded from the standpoint of good reasoning. State, Through Department of Highways v. Stoer, 238 La. 718, 116 So.2d 498; State, Through Department of Highways v. Barber, 238 La. 587, 115 So.2d 864. Here the trial court was of the opinion that the comparable sales used by the defendants’ witnesses reach a result which “more nearly coincides with the conclusion that I have reached from hearing all this evidence and considering all these reports,” and therefore gave more weight to their valuations. We are in complete accord with the findings of the trial judge.
For these reasons, the judgment is affirmed.