HEARD, Judge.
This is an expropriation proceeding under the “quick-taking” statute, LSA-R.S. 48:441-460. The State of Louisiana, through the Department of Highways, deposited the sum of $10,785 in the registry of the court for the value of 18.469 acres of land and the improvements thereon. Clyde Cartlidge the owner of the 18.469 acres of land, answered the petition of the State claiming $20,000 for the land and improvements and $15,000 in severance damages.
At the trial it was stipulated that the value of the improvements was $5,610. The trial court determined that the value of the land taken was $550 per acre or a total of $10,157.95, and further held that there was severance damage to Cartlidge’s remaining 139 acres not taken in the amount of $75 per acre or a total of $10,425. The court also found that Cart-lidge received a special benefit of $2,400 as a result of his sale of dirt to the party constructing the highway for which his land was expropriated. The State perfected a devolutive appeal from this judgment.
The State specifies as error the following: (1) the trial court erred in awarding the sum of $550 per acre for the part taken, and (2) in awarding the sum of $75 per acre as severance damages to the remaining 139 acres of land.
Before discussing the facts we will state some general principles applicable to compensation of the landowner in expropriation cases. These principles are so well settled that citation is not necessary. “Just and adequate compensation” as required by the Louisiana Constitution is the market value of the land taken. Market value is the price which a willing and informed buyer would pay a willing and informed seller in usual circumstances in light of the highest and best use to which the property may be put in the not too distant future. The best method of ascertaining what a willing and informed buyer would pay a willing and informed seller in usual circumstances in light of the highest and best use to which the property may be put in the not too distant future is through the use of comparable sales. Comparable sales are recent sales of similar property in the vicinity of the property to be expropriated. Testimony of expert witnesses is given effect where it appears to be based on sincerity and good reasoning. Severance damages are determined by taking the market value of the land not taken prior to the taking and comparing it to the market value of the land not taken after the taking.
With these general principles in mind we will consider the testimony in this case.
J. Carson Dopson, real estate appraiser, found the market value of the land to be $550 per acre. He testified that the highest and best use of the land was for farming and small tract sales. From his testimony it appears that Dopson based his estimate of market value on the following comparables:
(1) James W. Beavers, et al. to various vendees, $1,000 per acre for subdivision lots in Lakeview Acres.
(2) Glenn Tidwell to various vendees, $1,466 per acre for subdivision lots.
(3) W. D. Roark to R. D. Mitchell, $1,100 per acre for 4.55 acres fronting on U.S. Highway 80 with waterfront backing on Crew Lake.
*177 (4)Huenefeld to the Department of Highways, $543 per acre, 118.973 acres of land lower than the subject property.
Dopson indicated that he used sales of subdivision lots partially to show that there was a market for this in the area. Dopson estimated severance damages at $150 per acre. This severance damage was based primarily on the fact that Cartlidge’s 157.469 acres are now split into two tracts of 77 and 63 acres.
Malcolm Sevier, real estate appraiser, testified that the market value of the land was $550 per acre. He felt that the highest and best use of the property was for farming with some value for rural home-sites. Sevier’s estimate of market value is based on the following comparables:
(1) Huenefeld to Department of Highways, same as Dopson’s fourth comparable.
(2) Gross to Department of Highways, $300 per acre for 36.6 acres of land which is covered with water much of the year.
(3) W. D. Roark to R. D. Mitchell, same as Dopson’s third comparable.
(4) S. N. Miller to I. H. Sullivan, $295 per acre for 26 acres of pasture land lower than the Cartlidge property with poorer soil type.
(5) A. N. Miller to Ed Stringfellow, $250 per acre for 10 acres with a poorer soil type than the subject property.
Sevier found severance damages in the amount of $50 per acre for the 66 acre tract and $100 per acre for the 73 acre tract. The severance damages were based on the loss of long turn rows and loss of drainage.
Wayne Medley, real estate appraiser, testified that the value of the land was $310 per acre. He felt that the highest and best use of the land is for farming, and estimated market value based on the following comparables:
(1) E. G. Howard to I. L. Thompson, $200 per acre, 120 acre tract located twelve to thirteen miles east of the Cartlidge property. The land was cleared and in cultivation.
(2) Gilley to Graves, $221.50 per acre for a 307 acre tract sixteen miles from subject property. The land was partially cleared and soil type was inferior to the Cartlidge property.
(3) Bishop to Henry, $300 per acre for a 230 acre tract located about the same distance from Start, La., as subject property. Farming on this property has not been as good as on the subject property.
(4) Henry to Malone, $349.28 per acre for 28.63 acres.
(5) Henry to Finley, $349 per acre for 40 acres.
(6) Edwards to Stringfellow, $300 per acre for 80 acres.
Medley found that there was no severance damage to the remaining property of Cart-lidge. Medley stated that “as one farming unit to Mr. Cartlidge, they are not as operable as they were prior to the taking, but to place them on the market and sell them, there is no diminution in value.” Medley stated that the highest and best use of the property was farming. If this is so, and the farm has been damaged as to Mr. Cart-lidge, then it seems likely that the property will not sell for as much as before to any buyer looking for farmland.
Dean Carter, real estate appraiser, testified that the market value of the land was $315 per acre. He felt that the highest and best use of the property was for agricultural purposes. Carter’s estimate of market value was based on the following comparables:
(1) Smith to Earle, $200 per acre for a tract of land containing 38 and *178 acres of cleared land in cultivation. This land is inferior to the Cart-lidge property due to location and limited access.
(2) Pahal to Wynn, $225 per acre for a 40 acre tract located li4 miles north of Crew Lake. This land is inferior to the Cartlidge property due to location, desirability, and soil type.
(3) E. G. Howard to I. L. Thompson, same as Medley’s first comparable.
(4) Bishop to Henry, same as Medley’s third comparable.
Carter estimated that there was no severance damage to the remainder of Cart-lidge’s property.
As stated earlier, the testimony of expert witnesses should be given effect when grounded in sincerity and good reasoning. The trial judge gave effect to the estimates of Dopson and Sevier concerning the market value of Cartlidge’s land. It appears that the comparables used by Dop-son and Sevier were more consistently within the vicinity of the subject property and their comparables, particularly the Hu-enefeld sale, needed fewer adjustments than the comparables used by Medley and Carter. The Huenefeld sale is particularly persuasive in attempting to find the true market value of the Cartlidge property. We are aware of the decisions which hold that sales to an expropriating authority are not controlling of market value. Still, we feel as the trial judge did that “certainly the voluntary sale to an expropriating authority would indicate that the property is worth no less than that paid voluntarily by the authority, for otherwise it would expropriate. . . . ” The price of the Huenefeld sale was approximately $543 per acre. As stated by the trial judge, “all appraisers conceded that the Huenefeld property was of low elevation and of an inferi- or soil type.” No doubt the Department of Highways is tiring of being confronted with the price of the Huenefeld sale in connection with expropriation proceedings in the Ouachita/Richland Parish area. Still, it is a persuasive sale, and we feel that in light of it and Dopson’s and Sev-ier’s other comparables, $550 per acre for the Cartlidge land is an accurate market value.
There is little doubt that there has been some severance damage to Cartlidge’s remaining property. Prior to the taking he owned approximately 157 acres of level, well drained land. After taking he owned two tracts of 66 and 73 acres, both of which have drainage problems. The trial judge found damage of $75 per acre and this seems reasonable from the testimony of the experts.
The special benefit allowed by the trial judge is not in issue on appeal.
For the above stated reasons the judgment appealed from is affirmed with costs to be borne by appellant.