349 So.2d 936 (1977)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Georgina Duet TERREBONNE et al.
No. 11401.
Court of Appeal of Louisiana, First Circuit.
July 11, 1977.
Rehearing Denied August 24, 1977.
Writ Refused October 14, 1977.
*937 Johnie E. Branch, Jr., Charles A. O'Brien, III, Asst. to Gen. Counsel, Baton Rouge, for plaintiff and appellant.
Stanley L. Perry, Galliano, for defendants and appellees.
Before LANDRY, EDWARDS and COLE, JJ.
LANDRY, Judge.
Plaintiff (Department) appeals from judgment awarding defendants (Owners) $28,548.12, an increase over the $5,234.00 deposited in court by the Department, as compensation for two parcels of land expropriated for relocation of La. 1, Golden Meadows, Lafourche Parish, which award exceeds the amount for which Owners prayed, and also awarding Owners $5,000.00 attorney's fees. We amend.
The properties taken are designated as Parcels 19-2 and 17-6, State Project 64-04-20 comprising portions of two separate tracts belonging to Owners. Parcel 19-2 is from a parent tract measuring 77 feet in width commencing 1,617 feet west of present La. 1 and running back to the 40 arpent line. From La. 1, a road leads westerly toward this tract a distance of 1,000 feet. This parcel, containing .350 acres, is situated 2,200 feet west of La. 1 and is part of a tract which Owners have gradually developed into a subdivision by selling residential lots therefrom. As each residential site is sold, Owners clear an extension of the road thereto which road is then improved by local governing authorities at no cost to Owners.
Parcel 17-6 is part of a parent tract measuring 511 feet front on the west side of La. 1 and extending westerly to the 40 arpent line, containing 90 acres. The two parent tracts are approximately 1,200 feet apart. Parcel 17-6, also situated 2,200 feet west of La. 1, contains 2.337 acres. Owners' residences are situated on this parent tract near La. 1, but said residences are not affected by the taking.
The expropriations were filed November 21, 1975. It is conceded the best and highest use of subject parcels is for residential development. In determining market value of Parcel 19-2 the trial court used as comparables, prior sales by Owners of residential sites from the parent tract, and fixed value accordingly. In fixing the value of Parcel 17-6, the trial court used as comparables, two sales made by Owners from its parent tract, and a voluntary sale by the owner of Parcel 16-6 to the Department on May 2, 1975, said Parcel 16-6 being situated *938 708 feet south of Parcel 17-6 and the same distance west of La. 1.
The Department maintains the trial court erred in: (1) disregarding the Department's experts and substituting its own judgment as to land values; (2) selecting inapplicable comparables in valuing Parcel 19-2; (3) utilizing a sale to the Department as a comparable in establishing the value of Parcel 17-6; (4) awarding a greater land value than that for which Owners prayed; and (5) awarding attorney's fees without proof of the value of such services.
The Department's appraisers, Carr T. Dowell and Lewis Derbes, testified in effect that they worked together in examining the records of Lafourche for comparable sales to establish market value of subject tracts. In a helicopter, they flew together over both properties before making their appraisals. In valuing Parcel 19-2, they each used the same 3 comparables. The first was a sale, by Serpas to Horton, of a parcel beginning 750 feet from La. 1 and running back to the 40 arpent line. This transaction, in December, 1972, was for a unit price of $1,640.00 per acre. Their next comparable was a sale, from Cheramie to Eymard, of a tract 60 feet wide commencing 1,400 feet from La. 1, by a depth to the 40 arpent line. This tract, a completely enclosed estate with no road access and one tract removed from the Serpas sale, sold in October, 1975 for $910.00 per acre. Their third comparable was a sale of a 44 foot wide tract beginning 530 feet from La. 1, and extending to the 40 arpent line. This tract, sold by Eymard to Chapert in November 1973, brought a unit price of $1,160.00 per acre.
Making adjustments for inferior drainage on Owners' tracts, allowing for what he believed to be lack of road access to subject parcels, and employing the front lands, rear lands formula (by which the front, middle and rear portions of a tract are valued differently), and allowing an annual appreciation factor of about 5%, Dowell valued Parcel 19-2 at $1,700.00 per acre or $595.00 for the .350 acres taken. He valued Parcel 17-6 at $2,100.00 per acre or $4,908.00 for the 2.337 acres involved.
Making similar but not identical adjustment, Derbes valued Parcel 17-6 at $1,700.00 per acre or $3,972.00, and Parcel 19-2 at $1,500.00 an acre or $525.00. Both Dowell and Derbes considered a tract with a width of one and one-half arpents to be ideal for residential subdivision in the area and that tracts of greater widths to be of less value for this purpose. For this reason, they downgraded Owners' wider tract. Using these same 3 comparables, they valued properties along a five mile stretch of the proposed highway. Derbes and Dowell both admitted they did not consider as comparables numerous prior sales (hereinafter mentioned) of residential sites made by Owners from their 77 foot wide strip which originally extended to La. 1 before Owners made sales therefrom. In addition, Derbes and Dowell stated that after making their appraisals, they went upon subject parcels, following Owners' clearing a path to facilitate their inspection. This inspection, however, did not change their appraisals.
Appellees, contending they could not obtain a local appraiser because all such experts were in the Department's employ, sought to establish values by comparable sales. As regards Parcel 19-2, Owners introduced 7 sales made from their 77 foot wide strip prior to the taking, as follows: (1) June 16, 1975, lot 150 by 60 feet in depth, located 1,467 feet from La. 1, and 446 feet from Parcel 19-2, for $2,700.00 or 30 cents per square foot; (2) September 13, 1972, lot 150 by 60 feet in depth, located 1,217 feet from La. 1, for $2,700.00 or 30 cents per square foot; (3) September 13, 1972, lot 225 by 60 feet in depth, 1,092 feet from La. 1 for $4,050.00 or 30 cents per square foot; (4) August 13, 1973, lot 100 by 60 feet in depth for $1,800.00 or 30 cents per square foot; (5) September 13, 1972, lot 25 by 60 feet in depth for $450.00 or 30 cents per square foot; (6) March 12, 1971, lot 100 by 60 feet in depth for $1,800.00 or 29.5 cents per square foot; and (7) January 5, 1968, lot 275 by 60 feet in depth for $4,950.00 or 36 cents per square foot, this lot being 492 feet from La. 1.
*939 To establish the value of Parcel 17-6, Owners introduced as comparables the following: (1) Sale from Owners to Duet, September 13, 1972 of lot 100 by 50 feet in depth, taken from the parent tract, for $1,500.00 or 30 cents per square foot; (2) Owners to Hunter, October 17, 1972, of lot 100 by 50 feet in depth, taken from the parent tract, for $1,500.00 or 30 cents per square foot; and (3) sale by Duet to the Department on May 2, 1975, of Parcel 16-6 for Project 64-04-20, containing 20,148.95 square feet for $5,440.00 or 26.99 cents per square foot, which comparable is the same distance from La. 1 as Owners' Parcel 17-6, and which comparable is situated 708 feet south of Parcel 17-6. Parcel 16-6 is part of a residential development but there are no residences in its immediate vicinity. Parcels 17-6 and 16-6 are both situated within the same forced drainage district which drains into a large canal at the 40 arpent line.
The trial court rejected the testimony of the Department's experts regarding the value of Parcel 19-2 because the witnesses did not consider the sales made by Owners from the parent tract prior to the taking. Concluding that sales from the parent tract indicated the value of residential sites sold therefrom, the trial court arrived at a value of 30 cents per square foot for this parcel. It then discounted this figure 3 cents per square foot for clearing brush from the land and established the value of Parcel 19-2 at 27 cents per square foot or $4,116.42 for the .350 acres taken.
In determining the value of Parcel 17-6, the trial court rejected the testimony of the Department's experts and relied upon the sales from that parent tract and the voluntary sale by Duet to the Department of tract 16-6, which latter transaction involved a price of 27 cents per square foot. Making a 3 cents per square foot adjustment for clearing and draining, the trial court fixed the value of Parcel 17-6 at 24 cents per square foot or $24,432.00 for the 2.337 acres taken.
The Department correctly maintains a trial court may not rely on its own opinion in fixing values in expropriation cases, and may not substitute its own judgment for that of experts. The court may, however, take judicial notice of facts within the common knowledge of persons of ordinary understanding. State Through Department of Highways v. Thurman, 231 So.2d 692 (La.App. 1st Cir. 1970). It is significant that the trial court noted it is a matter of common knowledge that the scarcity of residential sites in lower Lafourche Parish (where subject parcels are situated) has abnormally increased land values to the point that available residential sites are selling for premium prices.
Testimony of experts must be given effect if it appears reasonable and well founded. State, Through Department of Highways v. Stoer, 238 La. 718, 116 So.2d 498 (1959); State, Through Department of Highways v. Dodge, 168 So.2d 430 (La.App. 3rd Cir. 1964).
The weight of opinion testimony is determined by the professional qualification and experience of the expert, the facts and studies upon which his opinions are based, and, in the case of land appraisals, his familiarity with the location. LSA-R.S. 48:443; State, Through Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972).
Expert opinion may be disregarded if it impresses the court unfavorably. State, Through Department of Highways v. Stoer, above; State, Through Department of Highways v. Dodge, above.
The trial court found the Department's experts were not familiar with land values and the factors affecting such values in the lower Lafourche area. The trial court was particularly unimpressed with the opinion of the Department's experts to the effect that wider tracts are less valuable for residential subdivision development in the vicinity of this taking. Additionally, the trial court rejected the Department's experts' valuation of Parcel 19-2 because they did not consider prior sales from the parent tract.
*940 We find no merit in the Department's argument that the trial court erred in using the voluntary sale of Parcel 16-6 to itself as a comparable in determining market value of Parcel 17-6. Our jurisprudence holds that a voluntary sale by an owner under threat of imminent expropriation is relevant in establishing market value, especially where it indicates the expropriated property is not worth less than the sum voluntarily paid by the expropriating authority. State, Through Department of Highways v. Covington Interstate, Inc., 295 So.2d 828 (La.App. 1st Cir. 1974); State, Through Department of Highways v. Cartlidge, 258 So.2d 175 (La.App. 2d Cir. 1972); State, Through Department of Highways v. Dodge, above. Such transactions, while not controlling, may be considered in fixing market value. Under the circumstances, we find the trial court properly fixed the value of Parcel 17-6, based on the two sales from the parent tract, and the voluntary sale by another owner to the Department of a similar parcel situated only 708 feet distant.
Owners prayed for judgment in the sum of $21,400.00 as compensation for the taking of their lands. The Department urges trial court error in awarding Owners $28,548.42 because the award exceeds the amount for which Owners prayed.
An award may exceed requested damages when otherwise inadmissible evidence of such an excess is admitted without objection. LSA-C.C.P. Article 1154. In this instance, the acts of sales introduced by Owners were admissible in proof of damages for which Owners prayed. Being thus admissible, these offerings cannot be considered to have enlarged the pleadings. Sterkx v. Gravity Drainage District No. 1 of Rapides Parish, 214 So.2d 552 (La.App. 3rd Cir. 1968). Accordingly, the amount awarded must be reduced to the $21,400.00 for which Owners prayed.
We find no merit in the Department's claim that the trial court erred in awarding attorney's fees despite Owners' failure to offer evidence of the value of services rendered herein. LSA-R.S. 48:453(E) permits an award of attorney's fees where compensation is awarded in excess of the deposit by the Department at the time of taking. Such fees may not exceed 25% of the difference between the deposit and the court's award.
It is well settled that a trial court is capable of assessing attorney's fees without proof of the value thereof where such services are performed under the eye of the court. Cain v. Employers Casualty Company, 236 La. 1085, 110 So.2d 108 (1959); Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (1956). In making awards for attorney's fees, the trial court is vested with considerable discretion, the exercise of which will not be interfered with save in a case of clear abuse.
In this instance, the pertinent statute limits an award to 25% of the difference above noted. The trial court's award of $5,000.00, predicated on the award granted, was not an abuse of its discretion. Since, however, we have reduced the award, we must apply the statutory limitation. Accordingly, we reduce proportionately the award of attorney's fees from $5,000.00 to $3,500.00.
The judgment is amended to reduce the compensation awarded Owners from $28,548.12 to $21,400.00, and to reduce attorney's fees awarded from $5,000.00 to $3,500.00. The Department is cast for all costs for which it is legally accountable.
Amended and rendered.